**In re WALAT FARMS, INC., Debtor.**

**Bankruptcy No. 85–09344.**

United States Bankruptcy Court,
E.D. Michigan, N.D.

May 21, 1986.

David J. Fisher, Saginaw, Mich., for New Century Bank.

Ralph I. Selby and Randall L. Frank, Bay City, Mich., for debtor.

## MEMORANDUM OPINION REGARDING MOTION OF NEW CENTURY BANK TO BE PLACED ON UNSECURED CREDITORS COMMITTEE

ARTHUR J. SPECTOR, Bankruptcy Judge.

Now before the Court is the motion of New Century Bank (referred to as the bank) to be appointed as a member of the Official Unsecured Creditors' Committee in this Chapter 11 case. The bank possesses a security interest in various estate property, but the value of that property is far less than the amount of its claim. Thus, it is undersecured, that is, it holds a secured claim to the extent of the value of its security, and an unsecured claim for the balance. 11 U.S.C. § 506(a). The debtor objects to the bank's being placed on the committee.[1]

The appointment and composition of creditors' committees, unsecured and otherwise, is governed by § 1102 of the Bankruptcy Code.[2] The statute provides that the Court shall appoint a committee of unsecured creditors and other committees as are appropriate, and further provides that those creditors holding the "seven largest claims against the debtor *of the kinds represented* on such committee ...", shall ordinarily be appointed. § 1102(b) (emphasis added). Upon motion of a party in interest, the court may enlarge or alter the membership of a committee if the committee's composition "is not representative of the different kinds of claims or interests to be represented." § 1102(c).

Thus, the question presented here is whether a creditor whose unsecured claim arises from its status as a holder of an undersecured claim is a claim "of the kind"

1. No current members of the committee have objected to the bank's request.

2. This statute states as follows:
   (a)(1) As soon as practicable after the order for relief under this chapter, the court shall appoint a committee of creditors holding unsecured claims.
   (2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The court shall appoint any such committee.
   (b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.
   (2) A committee of equity security holders appointed under subsection (a)(2) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee.
   (c) On request of a party in interest and after *notice and a hearing, the court may change* the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

represented by other members of the unsecured creditors committee whose claims against the debtor are wholly unsecured.

In attempting to determine the standards governing who may appropriately serve on an unsecured creditors' committee, several courts have allowed various entities other than general unsecured trade creditors to serve. *See, e.g. In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir.1984) (employees' union appointed to unsecured creditors committee); *In re Charter Co.*, 42 B.R. 251, 12 B.C.D. 521, 11 C.B.C.2d 385 (Bankr.M.D. Fla.1984) (court declined to remove indenture trustees for debenture holders from committee); *In re Shaffer-Gordon Assoc., Inc.*, 40 B.R. 956, 12 B.C.D. 322 (Bankr.E. D.Pa.1984) (unsecured creditors of debtor, who had recourse to third parties for payment, were allowed to be on committee); *In re American Federation of Television & Radio Artists*, 30 B.R. 772, 10 B.C.D. 1121 (Bankr.S.D.N.Y.1983) (judgment creditor holding 98% in amount of unsecured debt was properly a member of the committee); and *In re Vermont Real Estate Investment Trust*, 20 B.R. 33, 9 B.C.D. 127, 6 C.B.C.2d 862 (Bankr.D.Vt.1982) (wife of debtor's former chief operating officer, who was also named as a defendant in litigation commenced by debtor, added to committee). Courts have on occasion held that a certain creditor should not be on the creditors' committee. *See, e.g., In re Swolsky*, 55 B.R. 144, 13 C.B.C.2d 985 (Bankr.N. D.Ohio 1985) (creditor whose wife was the bookkeeper, office manager and vice president of the debtor removed from committee); *In re Daig Corp.*, 17 B.R. 41, 5 C.B. C.2d 233 (Bankr.D.Minn.1981) (committee member whose principal officer was the father of the debtor's chairman was properly removed from the committee); and *In re Glendale Woods Apartments Ltd.*, 25 B.R.

414 (Bankr.D.Md.1982) (insider of debtor removed from committee).

In one case decided under the Bankruptcy Act of 1898, *In re Ascot Textile Corp.*, B.L.R. ¶ 64,427 (S.D.N.Y.1972), the court did permit a creditor whose collateral was of trivial value to serve on the unsecured creditors' committee. And in *In re Fidelity America Mortgage Co.*, 7 B.C.D. 1186 (Bankr.E.D.Pa.1981), the court was faced with a motion to establish a second committee for mortgage holders. The court granted the motion, but implied that the mortgagees holding undersecured claims might be appropriately represented by the unsecured creditors' committee. However, we have been unable to find any reported decision under the Bankruptcy Code discussing whether an undersecured creditor is eligible for appointment to the committee under § 1102(a) as an unsecured creditor.[3]

The Report of the House Committee on the Judiciary, H.Rep. 595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin. News 1978, p. 5787, which accompanied H.R. 8200, contained a draft of § 1102 almost identical to that which eventually was adopted in the Bankruptcy Reform Act of 1978. In discussing the appointment, operation and function of the unsecured creditors' committees, the report stated that:

The bill does not provide for the inclusion of secured creditors. Often, the battle in a reorganization case is between secured and unsecured creditors. Because the purpose of a committee is to represent a class that is too large to speak for itself as a whole, inclusion of representatives from other classes would present a potential for conflict within the committee, and the danger of committee action being taken to the detriment of the class it is intended to represent. Secured creditors are most often in single-member classes, and thus are able to speak for them-

---

**3.** 5 *Collier on Bankruptcy* ¶ 1102.01[2], 1102–10 (15th ed. 1985) states that:

Neither section 1102(c)(1) nor section 1102(b)(1) prohibits the appointment to the section 1102(a)(1) committee of persons holding both unsecured claims and secured claims or ownership interests. If the holders of the

seven largest unsecured claims also happen to be the holders of the seven largest secured claims in the case, the court may appoint such creditors to the section 1102(a)(1) committee. Unfortunately, no authority is cited in support of this proposition.

selves individually. *Nevertheless, the bill continues to permit secured creditors to serve as non-voting members of the unsecured creditors' committee.* H.Rep. 595, 95th Cong. 1st Sess. 236 (1977), U.S.Code Cong. & Admin.News 1978, 6195. (Emphasis added).

Although the above excerpt contains language that seems to indicate that secured creditors were not to be on the unsecured creditors' committee, we may also infer, from the emphasized sentence, that the members of the Judiciary Committee intended that § 1102 would continue to allow secured creditors to participate on the unsecured creditors' committee to the extent allowed under the Bankruptcy Act and the Rules of Bankruptcy Procedure.

Under the Bankruptcy Act of 1898, as amended, creditors committees were not appointed by the court, but were normally elected by creditors at the first meeting of creditors. Rule 214 of the old Rules of Bankruptcy Procedure (which superseded § 44(b) of the Bankruptcy Act) provided that "the creditors entitled to vote for a trustee may, at the meeting of creditors or at any special meeting called for that purpose, elect a committee of three or more creditors."[4] Rule 207 (which superseded Act § 56) defined who was eligible to vote for committees. Generally, it permitted any party which had filed a facially sufficient proof of claim to vote for a trustee and members of the committee. Moreover, subsection (c) of the rule made specific provision for holders of secured (and priority) claims: "A creditor holding a claim which is secured or has priority shall be entitled to vote such claim only to the extent the claim exceeds the value of his security or the amount of his priority." Thus, for the purposes of voting at the meeting of creditors, an undersecured creditor could participate. *See* 12 *Collier on Bankruptcy* ¶ 207.09, 2–120 (14th ed. 1978).

While the Rules defined who was eligible to *vote* for a committee, nothing in either Rule 207 or Rule 214 expressly spoke to whether there was any difference between the class of creditors who could vote for the committee and those who could serve on it. However, it appears that eligibility to vote was equated with eligibility to serve on the committee: "Creditors eligible to serve on a creditors committee are those eligible to vote for the committee as set forth in Rule 207." 12 *Collier on Bankruptcy* ¶ 214.05, 2–172 (14th ed. 1978).[5] It is to this state of affairs, evidently, to which the House Report comment alludes. When the report states that secured creditors could participate as "non-voting" members, it meant that such creditors could not vote the value of their secured claim regarding committee business; however, those creditors *could* participate to the extent they were undersecured. And it is this practice, we find, that Congress intended to remain unchanged when it enacted § 1102 of the Bankruptcy Reform Act in 1978.

Further support for our conclusion is found in the Advisory Committee Note to Official Bankruptcy Form Number 9, the "List of Creditors Holding 20 Largest Unsecured Claims." Specifically, the note states that "[a] secured creditor should be listed among the 20 largest unsecured creditors only if that creditor is sufficiently undersecured so as to fall within that category." The note further states that one of the purposes of the list is to facilitate the creation of an unsecured creditors' committee. Thus, the drafters of the Bankruptcy Rules and Forms contemplated that undersecured creditors were to be included in the pool of candidates for membership on the committee; otherwise, their inclusion on this list would be unnecessary.

■ Therefore, we hold that a secured creditor whose claim exceeds the value of

---

**4.** Rule 214 applied in Chapter X and Chapter XII cases. In Chapter XI, Rule 11–27 applied. In addition to permitting elections of committees, it also permitted the court to appoint an unsecured creditors committee.

**5.** Again, the treatise fails to provide case authority for this statement.

its collateral and holds, in part, an unsecured claim, may be appointed to the unsecured creditors' committee under § 1102. True, an undersecured creditor's rights and position vis à vis the debtor are somewhat different than the rights of, for example, a general trade creditor. The former may be able to look to the collateral to reduce the debt, while the latter is left with only what the debtor's plan or the Code will give him. However, to the extent the undersecured creditor has an unsecured claim under § 506, he and the trade creditor are in the same position. Both the undersecured and unsecured creditor enjoy equal protection of their claims under the Code. They have the same rights to accept or reject the debtor's plan, § 1126; to file a plan for the debtor, § 1121; and to receive a distribution under the terms of the plan. Conversely, each creditor is equally subject to having the debtor's plan crammed down, § 1129(b), and, if the case is converted, each debtor is entitled to a *pro rata* distribution of any assets collected by the trustee. Since the rights of the undersecured creditor to protect or satisfy its unsecured claim are the same as those of a general unsecured creditor, the undersecured creditor should not be precluded from participating on the creditors' committee.

The debtor argues that even though the bank is an unsecured creditor, the nature of its claim is so different from that of the debtor's other unsecured creditors that it would be inappropriate to group the bank with those parties. The debtor notes that its other unsecured creditors are general trade creditors; their claims are relatively small in amount, and these creditors always intended to extend credit to the debtor on an unsecured basis. In contrast, the bank is a large, institutional lender which never intended to be an unsecured creditor; it lent to the debtor on a secured basis, and is unsecured only because of the failure of its collateral. Thus, the debtor takes the position that because the bank is an unsecured creditor unlike those currently represented on the committee, it would be more appropriate for us to establish another committee for undersecured creditors.

We are unpersuaded that these differences justify establishing separate committees for each sub-class of unsecured creditors. First, the concern regarding overgeneralization of claims is misplaced. At this stage in the proceedings, we are concerned only with whether an undersecured creditor may participate on the unsecured creditors' committee. Our holding that an undersecured creditor may be a member of that committee has no impact on whether the bank ought to be classified separately in other contexts, e.g., in the debtor's plan of reorganization. Whether the bank's unsecured claim is so dissimilar to the claims of other general creditors that it may—or should—be classified differently in the debtor's plan, § 1122, is an issue we have no reason to rule on yet. Second, nothing in § 1102 requires us to appoint separate committees for each sub-class of creditors. Section 1102 is worded in permissive terms which allow the Court wide latitude in establishing the number and composition of committees. Had NewCentury Bank moved for the creation of a separate committee of undersecured creditors, we could appoint one. *In re Fidelity Mortgage Co., supra.* However, we are not required to do so. The bank here asked us to appoint it to an existing committee rather than to a new, separate committee, and, since it possesses a claim of a kind similar to those on the committee, we may grant its request.

We realize, of course, that an undersecured creditor's desires for the ultimate resolution of this bankruptcy proceeding may in fact be quite different from that of other parties holding unsecured claims. Those positions may be so diametrically opposed that a conflict of interest arises. Suppose, for example, the undersecured creditor's security constitutes the primary asset of the estate, without which it would be impossible for the debtor to continue business. Should the bank, wearing its secured creditor hat, seek a lift of the automatic stay for the purpose of recovering its collateral, which would result in a *de facto* liquidation of the estate with no dis-

tribution to general unsecured creditors, the conflict is obvious. The general creditors represented by the committee stand to receive payment of their claims only if the debtor successfully reorganizes; yet a member of that committee is taking action which would make reorganization impossible. Conversely, the debtor may negotiate a plan of reorganization in which it proposes to classify the undersecured creditor differently from other unsecured claimants, giving the former more favorable treatment than the latter. In this situation, the undersecured creditor may be a leading proponent of a plan that is not in the best interest of the class which the committee is designed to protect. Again, there is a clear conflict of interest.

■ These concerns are real; again, however, they are premature. There is nothing in § 1102 which requires all members of the committee to have an identity of interest. In *In re Altair Airlines, supra,* the Third Circuit Court of Appeals acknowledged that the representatives of the pilots' union which it allowed on the committee might have a different desire for the outcome of the case. The court then stated that:

> Section 1103(c)(2) contemplates that the Creditors' Committee may investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business, and the desirability of the continuation of such business ... There is no reason why the voice of the collective bargaining representative should be the one claimant voice excluded from the performance of this statutory role.

*Altair Airlines,* 727 F.2d at 90.

In *In re Daig Corp., supra,* the debtor objected to one creditor's appointment to the committee, in part because it held such a large claim that the debtor might be required to negotiate with that creditor separately and propose separate classification in its plan of reorganization. The court held that these circumstances were insufficient to preclude membership of that creditor on the committee when the com-

mittee is being formed early in the case. *In re Daig Corp.,* 17 B.R. at 43, 5 C.B.C.2d at 235–236. The court also implied that if the added creditor's interests eventually proved to be at odds with other unsecured creditors, those creditors could take "appropriate actions" to protect their interest. *Id.* We note that § 1102(c), which allows a party in interest to seek modification of the composition or size of the committee, contains no time limit on such relief. Thus, if allowing an undersecured creditor to serve on the committee turns out to have been improvident, the situation can be rectified later upon request of a party in interest. The undersecured creditor can then be dropped from the committee, or conditions may be placed upon its further participation in the committee's affairs. *See In re Vermont Real Estate Investment Trust, supra.*

In the instant case the debtor has not shown that the bank's unsecured claim is so different as to make its presence on the committee inappropriate, nor do we have any reason to believe, at this time, that the bank's participation on the unsecured creditors' committee will detract from the committee's ability to conduct its statutorily-prescribed functions. Therefore, the motion of NewCentury Bank to be added to the Official Unsecured Creditors' Committee shall be granted, and it may participate in the business of that committee, subject to further supervision of the Court.

Upon submission, an order consistent with this opinion will be entered.