**In re MICROBOARD PROCESSING, INC., Debtor.**

**Bankruptcy No. 5–87–00159.**

United States Bankruptcy Court, D. Connecticut.

Feb. 6, 1989.

---

Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, Conn., for debtor.

Richard M. Leibert, Hunt & Leibert, Hartford, Conn., for Arthur Capozzi and Joseph Mallardi.

Eric J. Small, New Haven, Conn., Office of the U.S. Trustee.

Richard M. Coan, Coan, Lewendon & Royston, New Haven, Conn., for the Committee of Unsecured Creditors.

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtor moves, pursuant to Bankruptcy Code § 105(a) and Rule 60(b)(6) F.R. Civ.P.,[1] made applicable by Bankruptcy Rule 9024, to reconstitute the membership of the creditors' committee appointed by the court under Code § 1102(a)(1), by removing its two largest unsecured creditors. For the reasons that follow, the motion is denied.

## BACKGROUND

In March, 1983, the debtor was incorporated by Craig Hoekenga, Arthur Capozzi and Nicholas Pekar as trustee for Joseph Mallardi, who became the debtor's sole shareholders. In December, 1984, and January, 1985, agreements were executed under which the debtor would purchase Capozzi's and Mallardi's stock and pay them consulting fees and severance pay. On March 6, 1987, the debtor filed a petition under chapter 11 of the Bankruptcy Code and thereafter elected to reject those agreements. *See* Code § 365(d)(2). Capozzi and Mallardi filed proofs of claim for damages arising out of the rejection, *see* Code § 365(g), in the amounts of $740,-000.00 and $345,000.00, respectively. The debtor has objected to those claims, which are now the subject of pending adversary proceedings. On March 27, 1988, five creditors were appointed to the creditors' com-

---

**1.** This case was filed and the creditors' committee was appointed before the effective date of the 1986 amendment to Code § 1102, which repealed subsection (c) (August 20, 1987, in the District of Connecticut). Subsection (c) provided:

> On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section

if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

During oral argument, the parties agreed that the relief sought in the instant motion is available to the debtor under § 105(a) and Rule 60(b)(6). I agree that this court does retain the authority to change the composition of a creditors' committee. *See In re Texaco, Inc.,* 79 B.R. 560, 566 (Bankr.S.D.N.Y.1987).

mittee. At present there are four members: two trade creditors, Capozzi and Mallardi. The next highest claim, which is held by a trade creditor, is $38,000.00.

## DISCUSSION

In essence, the debtor argues that Capozzi and Mallardi should be removed from the creditors' committee because their claims arose out of alleged breaches of contracts and are now the subject of litigation in contrast to the claims of all other creditors whose claims have not been disputed. The debtor further argues that Capozzi and Mallardi should be removed because their claims are disproportionate to all other unsecured debt. Those arguments are unpersuasive.

■ A creditors' committee and its members owe no duty to the debtor or to the estate. *Manville Corp. v. Equity Sec. Holders' Comm. (In re Johns–Manville Corp.)*, 60 B.R. 842, 854 n. 23 (S.D.N.Y. 1986), *rev'd on other grounds*, 801 F.2d 60 (2d Cir.1986). A committee and the holders of claims who serve on it only have a fiduciary duty to the parties or class represented. *See Bohack Corp. v. Gulf & W. Indus., Inc. (Matter of Bohack Corp.)*, 607 F.2d 258, 262 n. 4 (2d Cir.1979); *Manville Corp., supra*, 60 B.R. at 854 n. 23; *Johns–Manville Sales Corp. v. Doan (In re Johns–Manville Corp.)*, 26 B.R. 919, 924– 26 (Bankr.S.D.N.Y.1983).

It is axiomatic that each unsecured creditor has a conflict with every other unsecured creditor in the sense that absent a 100% distribution,[2] the elimination or reduction of any such claim will benefit all others. That is not an impermissible conflict of interest which would bar appointment to or justify removal from a creditors' committee, nor does an impermissible conflict arise merely because one of the members of the committee has an adverse interest to that of the others. *In re Grant Broadcasting of Philadelphia, Inc*, 71 B.R. 655, 664 (Bankr.E.D.Pa.1987) ("[T]here is no prohibition … against an entity's serving

on a Creditors' Committee which has an interest adverse to other creditors. Indeed, if there were, many otherwise eligible committee members would be disqualified."). *See also In re Texaco, Inc., supra.*, 79 B.R. at 567; *Matter of Enduro Stainless, Inc.*, 59 B.R. 603, 605 (Bankr.N. D.Ohio 1986)).

*Johns–Manville Sales Corp. v. Doan, supra,* relied upon by the debtor to support its contention that there is an impermissible conflict of interest, does not, in my view, hold that every conflict between a debtor and creditor that ripens into litigation disqualifies the creditor from representation on a creditors' committee. The *Johns–Manville Sales Corp.* court found that an attorney who was serving on a creditors' committee representing asbestos claimants had an impermissible conflict with the other claimants who were his constituents when, in violation of the automatic stay, he prosecuted a state court action on behalf of an individual claimant.

■ Courts should not remove a member from a creditors' committee in the absence of specific evidence which supports a finding that the member has breached or is likely to breach a fiduciary duty to, or has an actual impermissible conflict of interest with, the class of creditors represented by that member. *See In re Grant Broadcasting of Philadelphia, Inc., supra,* 71 B.R. at 664–65; *Matter of Enduro Stainless, Inc., supra,* 59 B.R. at 605. Here, the asserted conflicts of interest are based upon the pendency of adversary proceedings which, if successful, would decrease the distribution to trade creditors. If that were a convincing argument, it would be a simple matter for a debtor to control the membership of a committee by simply challenging the claims of those creditors the debtor sought to remove and forcing them to litigate.

■ The unsupported argument that holding a disproportionately large claim constitutes an impermissible conflict of in-

---

**2.** It is conceded that the debtor's proposed plan is a fixed payment plan which is sufficient to pay the allowed claims of all trade creditors but

insufficient to pay all unsecured claims if the claims of Capozzi and Mallardi survive the debtor's objections.

terest fares no better. *See Debtor's Motion to Reconstitute Membership of Creditors' Committee ¶¶ 4, 6, at 3–4.* Code § 1102(b)(1) provides:

A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor. . . .

"Subsection (b) contains precatory language *directing* the court to appoint the persons holding the seven largest claims against the debtor. . . ." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 401 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787 (emphasis added). *See also Matter of Am. Fed'n of Television and Radio Artists,* 30 B.R. 772, 775 (Bankr.S.D.N.Y.1983) (finding that an unsecured creditor holding 98% of the total liabilities claimed against the debtor was properly a member of the creditors' committee). Thus, holding the largest claims is a reason to keep Capozzi and Mallardi on the committee, rather than a cause for their removal.

To the extent that the debtor still maintains that Capozzi and Mallardi should be removed because they are the only nonvendor creditors, *see Memorandum in Support of Debtor's Motion at 8,* that argument is also rejected. Code § 1102(b)(1) refers to "kinds [of claims] represented", and allows the continuance of prepetition committee members only if the committee "is representative of the different kinds of claims to be represented." *See also* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 401–02 (1977), U.S.Code Cong. & Admin.News 1978, p. 6357. As with the size of their claims, rather than constituting cause to remove Capozzi and Mallardi, the different nature of their claims provides reason for them to be retained on the committee. If they are removed, their "kind" of claim will not be represented, and the composition of the committee would conflict with the intent of § 1102.

It became apparent during oral argument that the debtor's motion was motivated by its asserted inability to negotiate with Capozzi and Mallardi which, the debtor maintains, is frustrating the formulation of a consensual plan. The debtor is incorrect in asserting that the recalcitrance of certain committee members justifies their removal. "There is nothing in the [Bankruptcy Code] . . . which would prevent service on the creditors committee of a creditor unsympathetic to the efforts of a debtor to reorganize." *In re M.H. Corp.,* 30 B.R. 266, 267 (Bankr.S.D.Ohio 1983). Further,

[t]he creditors' committee is not merely a conduit through whom the debtor speaks to and negotiates with creditors generally. On the contrary, it is purposely intended to represent the necessarily different interests and concerns of the creditors it represents. It must necessarily be adversarial in a sense, though its relation with the debtor may be supportive and friendly.

*In re Daig Corp.,* 17 B.R. 41, 43 (Bankr.D. Minn.1981). *See also Manville Corp. v. Equity Sec. Holders' Comm., supra,* 60 B.R. at 853–54 n. 23.

## CONCLUSION

The debtor's motion to reconstitute membership of the creditors' committee is denied, and IT IS SO ORDERED.