**In re The SHOREBANK CORP., et al., Debtors.**

**No. 12 B 581.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 12, 2012.

George N. Panagakis, Justin M. Winerman, Skadden Arps Slate Meagher & Flom LLP, Chicago, IL, Attorneys for debtors The ShoreBank Corp., et al.

Richard S. Lauter, Freeborn & Peters LLP, Chicago, IL, Attorney for Jamil Moore.

Elizabeth E. Richert, The Coleman Law Firm, Chicago, IL, Attorney for Mary Houghton and Ron Gryzwinski.

Lauren Newman, Thompson Coburn LLP, Chicago, IL, Attorney for Todd Brown.

Mark F. Hebbeln, Derek L. Wright, Foley & Lardner LLP, Chicago, IL, Attorneys for the Official Committee of Unsecured Creditors.

Alan P. Solow, DLA Piper LLP, Chicago, IL, Attorney for the F.D.I.C. as Receiver.

Roman L. Sukley, Office of the U.S. Trustee, Chicago, IL, Attorney for Patrick S. Layng, U.S. Trustee.

### *MEMORANDUM OPINION*

A. BENJAMIN GOLDGAR,
Bankruptcy Judge.

This matter is before the court for ruling on the emergency motion of Jamil Moore, Ron Gryzwinski, and Mary Houghton ("the movants") to direct the U.S. Trustee to reconstitute the unsecured creditors committee or alternatively for other relief. For the following reasons, the motion will be denied.

## 1. Facts

The relevant facts, few and undisputed, are drawn from the parties' papers and from the debtors' proposed plan and disclosure statement. They are also drawn, to a very limited extent and mostly for procedural details, from the court's docket and the transcript of the March 7, 2012 argument.

These jointly administered chapter 11 cases were filed on January 9, 2012. Just three weeks later, the debtors filed a disclosure statement and proposed a liquidating plan. The plan calls for, among other things, the establishment of a liquidation trust and appointment of a trust administrator. No date has been set for confirmation of the plan, but the debtors' stated intention has always been for these cases to move as quickly as possible to confirmation. The immediate post-petition filing of the disclosure statement and plan suggests the debtors mean what they say.

On February 15, 2012, the U.S. Trustee held a meeting to form an official committee of unsecured creditors. According to the movants, six unsecured creditors expressed interest in serving on the committee. Three are the movants themselves. Gryzwinski is a former director of debtor ShoreBank Corporation. Houghton is a former officer and director. Moore is a personal injury claimant with a claim against another of the debtors. Of the other three interested creditors, Todd Brown is also a former director. The remaining two, Bank of New York Mellon and The Wilmington Trust Company, are trust preferred security claimants ("TruPS creditors"). The securities they hold are subordinated notes.

The plan proposes several classes of unsecured creditors. Senior note holders are placed in Class 4. Gryzwinski, Houghton, Moore, and Brown are general unsecured creditors that the proposed plan places in Class 5. The TruPS creditors are placed in Class 6. The plan also proposes to create a liquidation trust on confirmation. Under the plan, senior note holders will receive their pro rata share of the liquidation trust as if classes 4, 5, and 6 were a single class, as well as their pro rata share of certain interests that but for the senior note holders' rights would be paid to the TruPS creditors. The senior note holders are expected to be paid 78% of their claims. General unsecured creditors will receive their pro rata share of the liquidation trust as if classes 4, 5, and 6 were a single class. Their expected recovery is 19%. The TruPS creditors will also receive their pro rata share as if classes 4, 5 and 6 were a single class, but only if the claimants in Class 4—the senior note holders—are paid in full. The expected recovery of the TruPS creditors is zero.

After the February 15 meeting, the U.S. Trustee decided to form a three-member committee consisting of Brown and the two TruPS creditors. After the meeting, however, and before the U.S. Trustee could give formal notice of the committee's formation, Brown resigned. According to the movants (and according to Brown's counsel), he became concerned about serving on a committee of which TruPS creditors constituted a majority.

Although no committee had been formed, on February 29, 2012, the movants filed the motion now before the court in which they complain of the committee's makeup and seek to have the court reconstitute it. The motion expressed the same concerns that apparently caused Brown to resign, namely that the TruPS creditors dominate the committee. The movants contend that the structure of the plan—under which the TruPS creditors only get paid after the senior note holders are paid in full—gives the committee an incentive to act primarily in the TruPS

creditors' economic interest. That interest would involve pursuing "high-risk strategies that run the risk of depleting the estates of precious resources because it is the only way [the TruPS creditors] could possibly receive *any* recovery on their claims." (Mot. at 2 (emphasis in original)). Since no committee had officially been formed, however, and since it is difficult to reconstitute a committee that does not yet exist, on the March 1 presentment date the motion was continued until March 7.

The very next day, March 2, 2012, the U.S. Trustee filed a formal notice of the appointment of an official unsecured creditors committee. The committee has three members: Bank of New York Mellon and The Wilmington Trust Company (the two TruPS creditors), and Moore, the personal injury claimant. No former directors or officers are on the committee.

The day before the continued hearing on the motion to reconstitute the committee, the committee (now extant) filed through its proposed counsel an objection to the motion. The committee argues that the movants are not really interested in adequate representation of their interests but instead want to control the committee themselves to pursue their own agenda. The committee notes that the only specific "high-risk strategy" that worries the movants is the prospect of the committee " 'suing officers and directors.' " (Obj. at 2 (quoting Mot. at 9)). The movants' "real motivations," the committee asserts, are to prevent any investigation of possible claims against officers or directors and stave off objections to the release of those claims in the plan. (Obj. at 5).

On the March 7 continued date, the court held a hearing at which counsel for the movants, Brown, the U.S. Trustee, the committee, and the debtors were permitted to argue at some length. The movants and the committee disagreed about what they termed the court's "standard of review" of the U.S. Trustee's decision and how deferential that review should be. (Tr. at 6, 16). They also disagreed, of course, over whether reconstitution of the committee was necessary to ensure adequate representation of creditors. Although counsel for the movants and the committee tried to frame the latter issue differently (a difficult task given the papers they filed), the disagreement over adequacy of representation boiled down to deep suspicions on the movants' part about the motivations of the TruPS creditors and on the committee's part about the motivations of the directors and officers.

Twice during the hearing, the U.S. Trustee was invited to respond to the motion in writing but declined, citing the deliberative process privilege. (Tr. at 4, 34). *See, e.g.*, *In re Austin*, No. 85–40639, 1990 WL 10007376, at *2 (Bankr.S.D.Ga. March 23, 1990) (U.S. Trustee asserted the privilege as basis for not producing documents concerning decision to move to dismiss chapter 11 case). The other parties similarly declined an invitation to file any further briefs. (Tr. at 34). The parties also refused an evidentiary hearing at which factual matters raised during argument might have been fleshed out and supported. *(Id.* at 34–35).

At the conclusion of the argument on March 7, the parties having expressed an urgent need for a decision, and with briefing concluded, the court set a ruling date of March 12, just five days later. As promised, the matter is ready for ruling.[1]

---

1. Just before the close of business on March 8, having apparently experienced a change of heart, the U.S. Trustee filed an objection along with what was styled an "emergency" motion seeking leave to file it. Late in the afternoon on March 9, the movants filed a

The sole issue for decision is whether the membership of the existing committee must be changed to ensure adequate representation of creditors.[2]

## 2. Discussion

The answer is no. The motion is premised on the TruPS creditors' conflict of interest, a conflict resulting from the way the debtors' plan classifies and proposes to treat unsecured claims. But the movants' assertion that these creditors will breach their fiduciary duties as committee members and act contrary to the interests of the creditors they represent is currently no more than vague and unsupported speculation. The emergency motion to reconstitute the committee will be denied.

### a. Statutory Framework

The ability of bankruptcy courts to alter the membership of statutory committees has an uneven history. Originally, section 1102(c) of the Code allowed a court to alter committee membership or size if the court determined that the membership was not representative. *See* 11 U.S.C. § 1102(c) (repealed 1986). Then, in 1986, the U.S. Trustee program was expanded and made permanent, and section 1102(c) was repealed, the goal being to " 'separate the administrative duties [of the United States trustee] from the judicial tasks, leaving bankruptcy judges free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determina-

tion.' " *In re Barney's, Inc.*, 197 B.R. 431, 438–39 (Bankr.S.D.N.Y.1996) (quoting H.R.Rep. No. 99–764, 99th Cong., 2d Sess. 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5230). Despite the repeal of section 1102(c), however, courts continued to inject themselves into the committee process, often invoking section 105(a), 11 U.S.C. § 105(a), as a basis for "reviewing" the U.S. Trustee's appointments. *See, e.g., In re Mercury Fin. Co.*, 240 B.R. 270, 276 (N.D.Ill.1999); *Barney's*, 197 B.R. at 439.

In 2005, Congress restored the explicit statutory authority of bankruptcy courts to order changes to the membership of creditors committees. Section 1102(a)(4), the provision at issue here, now provides in part: "On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders." 11 U.S.C. § 1102(a)(4).

The Code nowhere defines "adequate representation." Before section 1102(a)(4) was enacted, however, courts employed a series of factors to determine "adequate representation" under section 1102(a)(2), which concerns the ability of courts to order the appointment of additional committees rather than alter the membership of a specific committee. 11

---

response to the U.S. Trustee's objection. The U.S. Trustee's motion for leave has been denied, and neither the U.S. Trustee's objection nor the movants' response to it has been considered. At the March 7 hearing, these parties were asked if they wanted to file anything else. They declined. If judicial decisions are going to get made, especially when the parties want a decision urgently, there comes a point when the barrage of paper simply has to stop. In this case, it stopped on March 7.

**2.** As filed, the emergency motion not only sought a change in committee membership, it also requested as alternative relief either the appointment of a directors and officers committee or the disbanding of the unsecured creditors committee altogether. But the first request has not been pressed (it was not even mentioned at the argument), and the second has been abandoned. (Tr. at 17).

U.S.C. § 1102(a)(2). The factors included the ability of the committee to function, the nature of the case, the standing and desires of the various constituencies, the ability for creditors to participate in the case without an official committee, the possibility that different classes would be treated differently under a plan and need representation, and the motivation of the movant. *In re Enron Corp.,* 279 B.R. 671, 685 (Bankr.S.D.N.Y.2002). The few reported cases under section 1102(a)(4) employ these same factors. *See, e.g., In re Park West Circle Realty, LLC,* No. 10–12965(AJG), 2010 WL 3219531, at *2–3 (Bankr.S.D.N.Y. Aug. 11, 2010).

■ Another factor courts sometimes consider in determining adequate representation is whether members of a committee have conflicts of interest. *See, e.g., Barney's,* 197 B.R. at 442; *In re Walat Farms, Inc.,* 64 B.R. 65, 69–70 (Bankr. E.D.Mich.1986). The mere presence of conflicts, though, is insufficient to show a lack of adequate representation. *In re Garden Ridge Corp.,* No. 04–10324(DDS), 2005 WL 523129, at *4 (Bankr.D.Del. March 2, 2005). Because a committee represents the interests of all unsecured creditors, and because those creditors inevitably have different interests, courts recognize that conflicts are inherent in any committee. *Enron,* 279 B.R. at 689; *In re Sharon Steel Corp.,* 100 B.R. 767, 777–78 (Bankr.W.D.Pa.1989). Courts recognize, as well, that committee members have fiduciary obligations to the other creditors, obligations that constrain what might otherwise be permissible, self-interested behavior, *In re Nationwide Sports Distribs.,* 227 B.R. 455, 463–64 (Bankr.E.D.Pa.1998).

■ Before a conflict of interest necessitates reconstitution of a committee, then, there must be specific evidence that the committee member or members with the conflict have breached or are likely to breach their fiduciary duties. *See Barney's,* 197 B.R. at 442; *In re Laclede Cab Co.,* 145 B.R. 308, 309–10 (Bankr.E.D.Mo. 1992); *In re Microboard Processing, Inc.,* 95 B.R. 283, 285 (Bankr.D.Conn.1989); *In re Richmond Tank Car Co.,* 93 B.R. 504, 507 (Bankr.S.D.Tex.1988) (requiring "specific acts" indicating a breach or conflict); *Walat Farms,* 64 B.R. at 70 (recognizing conflicts of interest but calling the concern "premature"); *see also Garden Ridge,* 2005 WL 523129, at *4 (noting that adequate representation is lacking only when conflicts "prevent" a committee from performing its fiduciary duty); *Enron,* 279 B.R. at 686, 693 (recognizing that conflicts may disenfranchise certain creditors but refusing to appoint separate committees where there was no showing that the existing committee was providing inadequate representation); *Sharon Steel,* 100 B.R. at 779 (rejecting request for separate debenture committee where there was no showing that any conflict prevented adequate representation).

### b. "Standard of Review"

■ Before the court can address whether the movants made the necessary showing, a preliminary question the parties raise must be considered. The movants and the committee disagree about the appropriate "standard of review" of the U.S. Trustee's decision. The movants contend that the standard is "de novo." (Mot. at 7). The committee argues for a deferential "arbitrary and capricious" standard (Obj. at 4), a standard usually associated with administrative review, *see* 5 U.S.C. § 706(2)(A).

The correct answer is that there is no "standard of review." Section 1102(a)(4) does not authorize the court to "review" any decision of the U.S. Trustee. It says "the court may order the United States trustee to change the membership of a

committee ... if the court determines that the change is necessary to ensure adequate representation." 11 U.S.C. § 1102(a)(4). The plain language of the statute, in other words, calls for an independent determination of whether a change in committee composition is necessary; it does not give the bankruptcy court an appellate function or a role akin to administrative review. Section 1102(a)(4) is clear on its face and must be applied as written. *See Atunnise v. Mukasey*, 523 F.3d 830, 836 (7th Cir.2008).[3]

Reading section 1102(a)(4) to call for an independent decision makes sense, not only because the statutory language is clear, but because the nature of the U.S. Trustee's decision does not lend itself to "review" in the appellate or administrative sense. One body's "review" of another body's decision is possible only when the decision is accompanied by a stated rationale and a record of some kind on which the decision was based. But the U.S. Trustee's decision appointing the committee in this case comes with neither. The U.S. Trustee merely filed a notice stating that a committee had been appointed and naming the members. The notice did not have any explanation of the decision to appoint this particular committee rather than another. Nor does it appear that the U.S. Trustee made any sort of record of his process in reaching the decision.

The U.S. Trustee did not provide a rationale or make a record for the simple reason that the Code did not require him to. *See In re JNL Funding Corp.*, 438 B.R. 356, 362 (Bankr.E.D.N.Y.2010) (not-

ing that in appointing a committee the U.S. Trustee "is not engaged either in a fact finding mission" or in "deciding issues of law"). The only requirement in the Code is that the U.S. Trustee "appoint a committee of creditors holding unsecured claims." *See* 11 U.S.C. § 1102(a)(1).

Because the U.S. Trustee supplies neither a rationale nor a record, there is nothing for a court to review—other than the bare decision itself, that is—and without out a rationale or a record no meaningful review can take place. *Cf. Gallegos v. Lyng*, 891 F.2d 788, 793 (10th Cir.1989) (stating that an agency's action must be reviewed "on the basis articulated by the agency and on the evidence before the agency at the time it acted," and refusing to review a decision "without a record"); *N.L.R.B. v. North Elec. Co., Plant No. 10*, 644 F.2d 580, 584 (6th Cir.1981) (noting that meaningful administrative review "is impossible" without a record).

█ The parties' "standard of review" arguments are based on a line of decisions issued between the 1986 and 2005 revisions to section 1102. In those decisions, courts read into the equitable powers conferred under section 105(a) an ability to "review" the U.S. Trustee's committee appointments. Without such a check, courts reasoned, the U.S. Trustee would enjoy "wholly unfettered discretion in appointing committee members," *In re Pierce*, 237 B.R. 748, 753 (Bankr.E.D.Cal.1999), "with no possibility of judicial review," *Mercury Fin.*, 240 B.R. at 276 (internal quotation omitted). But under the BAPCPA revi-

3. Some courts have held that when the U.S. Trustee acts as an administrative arm of the bankruptcy court, it is an administrative agency *subject to the Administrative Procedure Act. See, e.g., In re Gideon*, 158 B.R. 528, 530 (Bankr.S.D.Fla.1993); *In re Myers*, 147 B.R. 221, 233 (Bankr.D.Or.1992). Even assuming these decisions are correct, the U.S.

Trustee's action in forming a creditors committee is not subject to administrative review because the action is not "made reviewable by statute," and section 1102(a)(4) gives parties in interest an "adequate remedy in a court." *See* 5 U.S.C. § 704 (describing final agency actions reviewable).

sions, these concerns are no longer valid. Now that section 1102(a)(4) allows the court to determine for itself whether a committee's make-up must be changed to ensure adequate representation of creditors, judicial review of the U.S. Trustee's decision is not only unnecessary, it is prohibited under the doctrine that "when a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir.1993).

In sum, the "standard of review" issue the parties have raised is a red herring. Section 1102(a)(4) demands an independent judicial determination of whether committee membership must be changed "to ensure adequate representation."

### c. Adequate Representation

█ The movants here have not demonstrated that a change in membership is necessary to ensure adequate representation.

The movants contend that the way the proposed plan classifies unsecured claims places the TruPS creditors in a conflict of interest. The conflict of interest exists because the TruPS creditors fall in Class 6 and will not be paid unless senior note holders in Class 4 above them are paid in full. According to the movants, the TruPS creditors therefore have an incentive to pursue "high risk strategies" to ensure the senior note holders in Class 6 get paid, strategies that are likely to reduce the recovery of general unsecured creditors in Class 5 (who are sandwiched between Classes 4 and 6). And a committee dominated by TruPS creditors, as the current committee is, will allow the creditors to pursue these alleged "strategies."

The problem with the movants' position is that they have discovered a conflict of interest, but that is all they have done, and conflicts of this kind are inevitable. *See*

*Enron,* 279 B.R. at 689; *Sharon Steel,* 100 B.R. at 777–78. The movants have not done more, producing "specific evidence" that the TruPS creditors have breached or are likely to breach their fiduciary duties to the creditor body, *Barney's,* 197 B.R. at 442 (quoting *Microboard Processing,* 95 B.R. at 285), or demonstrating that the conflict they have identified "prevent[s] an official committee from upholding its fiduciary obligations to all general unsecured creditors," *Garden Ridge,* 2005 WL 523129, at *4.

At the moment, the movants' concerns are only speculation, and vague speculation at that: the only "high risk strategy" the movants identify is the possibility that the committee will sue officers and directors. But nothing in the record as it stands suggests that the committee will pursue that strategy. The committee has not yet expressed an intention to pursue *any* particular strategy—hardly a surprise since the committee has only existed for ten days—and the committee itself says in its objection that no determination to sue former officers and directors has been made. The committee also notes plausibly that given the speed at which this case is moving, the trustee of the liquidation trust to be created at confirmation is far more likely than the committee to pursue any claims against officers and directors.

Even if the committee had decided to sue officers and directors, moreover, that alone would not show a lack of adequate representation. As the committee here observes, creditors committees necessarily look into the performance of former officers and directors of the debtor, *see In re Venturelink Holdings, Inc.,* 299 B.R. 420, 424 (Bankr.N.D.Tex.2003), and occasionally creditors committees sue them, *see, e.g., Official Committee of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.),* 422 B.R. 5

(Bankr.D.Del.2010). The committee could not be deemed to represent the creditors inadequately merely because it was doing its job.

In short, the movants would have a point here only if they had shown (a) that the committee was in fact going to sue former officers and directors of the debtors, and (b) that the suit would in fact affect adversely the interests of the creditor body— for example, because the action had little or no chance of success, or because the costs of pursuing it plainly outweighed the benefits. But the movants have made no such showing, probably because it cannot be made. They have not even made the assertion in their motion. Based on motivations, the movants' argument is wholly speculative, and mere speculation that a committee member's conflict of interest might one day ripen into an outright breach of fiduciary duty and a lack of adequate representation is not enough to warrant reconstituting a committee. *See, e.g., In re Penn–Dixie Indus., Inc.,* 9 B.R. 936, 940 (S.D.N.Y.1981) (affirming decision not to remove a committee member where no evidence was produced that charges of the member's future misconduct "were anything more than speculative"); *Richmond Tank Car,* 93 B.R. at 507–08; *Walat Farms,* 64 B.R. at 70 (calling the objecting creditors' concerns "real" but "premature"); *In re Enduro Stainless, Inc.,* 59 B.R. 603, 605 (Bankr.N.D.Ohio 1986) (refusing to change committee composition "based on mere assumptions").

The movants nonetheless complain that given the way the plan slices and dices the creditor body, the committee ought not to be dominated by creditors with subordinated claims who can expect to receive nothing. The movants suggest that two former directors (one a former officer as well) should be added to the committee so that their numbers at least equal the number of TruPS creditors, with the judgment creditor, Moore, providing any needed tiebreaker. A committee with this composition, the movants say, would be "fair and balanced." (Tr. at 7).

In the absence of some concrete reason to believe the TruPS creditors will not carry out their fiduciary duties, however, there is simply no reason to send the U.S. Trustee back to the drawing board and disrupt the bankruptcy case any more than it has already been disrupted. Nothing in section 1102 or in the concept of "adequate representation" requires that committees be formulated even to reflect the exact composition of the creditor body, *Garden Ridge,* 2005 WL 523129, at *3; *Enron,* 279 B.R. at 690, much less that a committee achieve some sort of perfect equilibrium of creditor interests. Would a committee with the membership the movants suggest be more "balanced" than the current committee? Probably. Is a more balanced committee necessary to achieve "adequate representation of creditors" in this case? No—not, at least, at this juncture in the case and on the current record.

If the committee takes some action with which the movants disagree, section 1109(b) of the Code will allow the movants to object and be heard. *See* 11 U.S.C. § 1109(b) (allowing any "party in interest" to be heard "on any issue"); *In re Johns–Manville,* 38 B.R. 331, 332 (S.D.N.Y.1983) (making this point). If the conflict of interest the movants have identified prevents the committee from functioning effectively· or causes possible breaches of fiduciary duty to become probable or actual, the movants will have section 1102(a)(4) as a remedy. But right now, with nothing more than a conflict of interest identified, it has not been shown that a change in committee membership is "necessary" to ensure adequate representation of creditors—certainly not in the usual sense of

"absolutely required," "essential," or "in-dispensable," *Webster's Third New Int'l Dictionary* 1511 (1981).

### 3. Conclusion

For these reasons, the emergency motion of Jamil Moore, Ron Gryzwinski, and Mary Houghton to direct the U.S. Trustee to reconstitute the unsecured creditors committee or alternatively for other relief is denied.