**In the Matter of SCHATZ FEDERAL BEARINGS CO., INC., Debtor.**

**Bankruptcy No. 80 B 20101.**

United States Bankruptcy Court,
S. D. New York.

July 29, 1980.

See also, Bkrtcy., 5 B.R. 549.

Stroock & Stroock & Lavan, New York City, for Official Creditors' Committee; Sheldon Lowe, New York City, of counsel.

Craig & Macauley, Boston, Mass., for UAW; William F. Macauley, Boston, Mass., of counsel.

Claude D. Montgomery, Asst. Gen. Counsel, Detroit, Mich., International Union, UAW, Otterbourg, Steindler, Houston & Rosen, New York City, for debtor; Conrad B. Duberstein, New York City, of counsel.

## HEARING ON APPLICATION OF INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURE IMPLEMENT WORKERS OF AMERICA FOR ORDER OF APPOINTMENT TO UNSECURED CREDITORS' COMMITTEE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The International Union, United Automobile Aerospace and Agricultural Implement Workers of America (UAW) and its Local No. 297, hereinafter referred to collectively as the "Union", have requested this court, pursuant to § 1102(c) of the Bankruptcy Code to be appointed as an additional member of the Committee of Unsecured Creditors in the above-captioned case. The Official Creditors' Committee opposes the Union's application, alleging that the Union is not a creditor and alternatively that the fiduciary duty imposed upon the members of the Creditors' Committee is inconsistent and in direct conflict with the stated responsibility of the Union to its members.

The debtor, Schatz Federal Bearings Co., Inc. of Poughkeepsie, New York, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 on March 5, 1980. The commencement of the voluntary Chapter 11 case constituted an order for relief under such Chapter, as prescribed in Code § 301. The United States Trustee then designated the nine members of a committee organized by creditors before the order for relief as the Official Creditors' Committee within the meaning of Code § 1102(b)(1) on the basis that such committee was fairly chosen and representative of the different kinds of

claims to be represented. The authority for such appointment by the United States Trustee is found in Code § 151102.

The Creditors' Committee met on various occasions before and after the commencement of this case. The Code § 341 meeting of creditors was called by the United States Trustee on April 28, 1980, at which time it is alleged by the Union that its counsel attended and requested, without success, to have a representative of the Union on the Creditors' Committee. On May 8, 1980, the Union filed its application, seeking membership on the Creditors' Committee. The Union argues that it is one of the largest unsecured creditors of the debtor, holding claims for accrued, unpaid obligations under the debtor's pension plan. The Union has filed a proof of claim in the amount of $462,843, of which $26,997 is designated as a priority claim, for unpaid contributions to the debtor's pension plan for the period from January 1, 1979, to December 31, 1979. The Union's claim is not listed on the debtor's schedule of liabilities. The Creditors' Committee argues that the creditor entitled to enforce the liability in question is the pension plan itself, or the administering board, consisting of two members appointed by the debtor and two members appointed by the Union. The debtor listed the Berk-

shire Life Insurance Co. as a creditor with respect to the pension plan obligation because the assets of the plan were invested in a group deposit administration policy with the Berkshire Life Insurance Company, to whom contributions under the plan are required to be made.

It is not disputed that the debtor is obligated under its collective bargaining agreement with the Union to maintain its existing pension plan, entitled "The Schatz Federal Bearings Co. Inc. UAW Local 297 Retirement Plan." The plan was established by the debtor as the plan sponsor, within the meaning of § 3(16)(B), ERISA, 29 U.S.C. § 1002(16)(B). The pertinent section of the plan upon which the Union relies is Article VI, Section 2, which provides that the debtor is obligated to fund the plan for all covered employees.[1] It is this obligation which the Union seeks to enforce through its proof of pension claim. Thus, unlike wages, which are owed to and enforceable by the debtor's employees, the pension plan payments are funding contributions under a collectively bargained labor agreement.

The Creditors' Committee asserts that "the funding obligation runs directly to the Plan and the Plan is the creditor with a claim." The Union argues that the debtor's pension plan obligation . . . "was a

---

1. Section 2. *Contributions or Payments.*

(a) During the term of this Agreement, the Company shall, from time to time, pay to the Trustee or Insurance Company contributions in such amounts as will maintain the Plan on a sound actuarial basis, provided, that, in any case, such amounts in the aggregate as of the day preceding each Anniversary of the Effective Date shall be at least sufficient, with respect to all employees covered by the Plan, to meet normal costs accruing prior to each such date, and to fund the initial unfunded past service liabilities on a level basis over a period of not more than thirty years from the effective date. All determinations by the Company of its contributions under this Section 1 shall be based on actuarial calculations made annually by the Actuary, a summary of which shall be transmitted to the Board.

(b) Deposits by the Company with the Trustee or Insurance Company of contributions computed in accordance with Section 1 of this Article shall be in complete discharge of the Company's financial obligation under this Plan.

(c) The Company may also make, from time to time, such additional contributions as it, in its sole discretion, deems desirable. Such additional contributions shall be considered as prepayment of contributions which the Company is required to make in accordance with Section 1 of this Article.

(d) At no time shall the Company be required to make contributions under this Article in excess of the maximum amount which the Company may deduct from its gross income for the purpose of computing its Income Tax.

(e) No employee shall be required to make any contributions to the Fund.

(f) Any forfeiture arising from an Employee's termination of employment or death or for any other reason prior to the termination of the Plan or the complete discontinuance of contributions hereunder shall be used to reduce any Company contributions made pursuant to the preceding paragraph (a) and (b) and shall not increase any benefits otherwise payable hereunder.

debt accrued in favor of the plan, which Schatz Federal Bearings Co., Inc. was obligated to pay in order to meet its obligations under its promise to the Union not to discontinue the plan." The Union further contends that it should "be viewed as a creditor since no one else has the contractual right to enforce the funding obligations of the plan, absent a denial of benefits."

## IS THE UNION A CREDITOR?

The term "creditor" is defined in Code § 101(9) to mean an:

"(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . .".

The two key phrases in this definition are "entity" and "has a claim." Under Code § 101(14), "entity" is defined to include "person, estate, trust, governmental unit . . . .". Therefore, in order for the Union to satisfy the definition of an entity possessing the status of a creditor, it must also be a "person." Once again reference must be made to the litany of definitions delineated under Code § 101, and specifically subsection (30), where we find that a "person" is stated to include an "individual, partnership, and corporation, but does not include governmental unit . . . .". Continuing along the path of incorporation by reference, as in the fashion established under the Internal Revenue Code, we learn that a "corporation", within the meaning of "person" under Code § 101(30) is defined in subsection (8) of the Code § 101 as follows:

"(8) "corporation"—

(A) includes—

(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses:

(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

(iii) joint-stock company;

(iv) unincorporated company or association; or

(v) business trust; but

(B) does not include limited partnership;"

Hence, if the Union is an unincorporated association, as defined under subsection (8)(A)(iv), it will be treated like a "corporation" for the purposes of meeting the definition of "person" under subsection (3) and will then qualify as an "entity" under subsection (14) so as to satisfy the requirement under subsection (9) that a creditor must be an "entity."

Prior to the enactment of the Bankruptcy Code it had been held that a labor union did not constitute an "association" within the definition of a corporation under 11 U.S.C. § 1(23) so as to qualify as a "person" under § 4(a) of the Bankruptcy Act 11 U.S.C. § 22(a), entitled to file a voluntary bankruptcy petition. *In re Highway and City Freight Drivers, Dockmen, and Helpers Local Union No. 600.* 3 Bankr. Ct.Dec. 528 (E.D.Mo.1977). However, the definition of the term "unincorporated association" under the new Bankruptcy Code was intended to overrule this holding and specifically to include a labor union as an "unincorporated association" *House Report No. 95–595,* 95th Cong. 1st Sess. (1977) 309; *Senate Report No. 95–989,* 95th Cong. 2d Sess. (1978) 22, U.S.Code Cong. & Admin. News 1978, pp. 5787, 5808, 6266. Since labor unions are a group of persons and organizational units who operate under the terms of national and local charters, they clearly may be regarded as unincorporated associations for purposes of the Bankruptcy Code. It therefore follows that the Union, as an unincorporated association, may be classified as an "entity" for purposes of Code § 101(9). It must next be determined whether or not such entity "has a claim against the debtor" so as to qualify as a "creditor" within the meaning of this section.

The debtor's pension plan obligations to its employees shall first be examined in the light of the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1001 et seq., which established standards of conduct, responsibility and ob-

ligation with respect to employee benefit plans and provided for appropriate remedies, sanctions and ready access to the Federal courts. Civil Enforcement under ERISA is expressly delineated in 29 U.S.C. § 1132, where, actions may be brought by a "participant", a "beneficiary", the "Secretary of Labor" or a "plan fiduciary". The definitions of these terms are found in 29 U.S.C. §§ 1002(7), 1002(8), 1002(13) and 1002(21) respectively and do not include a labor union which is referred to as an "employee organization", under 29 U.S.C. § 1002(4). Hence, the individual employees and not their union are expressly authorized to enforce the civil remedies created under ERISA. This point was noted in *Utility Workers Union v. Consumers Power Co.,* 453 F.Supp. 447, 450 (E.D.Mich.1978) where the court held:

> "The Union is concededly an employee organization within the meaning of ERISA. However, an employee organization is not mentioned in § 1132(a) as one of the persons or entities qualified to bring civil actions to remedy violations of the Act. Given the detail of the statutory scheme and the precise language chosen by Congress, the Court is persuaded that the Union lacks standing to sue under ERISA for the relief requested here. The individual plaintiffs are clearly entitled to sue under 29 U.S.C. § 1132(a)(1), (3), (4). Had Congress intended to confer the right to sue on an employee organization it would have said so. The Union must be dismissed as a party plaintiff."

Had the debtor's pension plan obligations not been incorporated in the existing restated collective bargaining agreement with the Union, dated April 14, 1977, there would be no question that an action intended to enforce a civil remedy under ERISA could not be maintained by the Union. *Utility Workers Union v. Consumers Power Co.,* supra. However, the debtor's pension plan was incorporated by reference in the collective bargaining agreement with the Union in the following words:

> "18.2.1. The existing pension plan of the Company will not be discontinued for the duration of the agreement."

Thus, absent any right to sue under ERISA, the Union draws support instead from the provisions of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, (Taft-Hartley Act) which gives unions a right to sue for violations of an agreement between an employer and a union. The Union asserts that the debtor's funding obligation under the pension plan for employees is also an obligation under a collective bargaining agreement as a result of its incorporation by reference.

Pension plan requirements may be incorporated by reference in a collective bargaining agreement so that the funding obligation may be regarded as collectively bargained subject matter. *Landy Packing Co. v. Amalgamated Meat Cutters, etc.,* 471 F.Supp. 1218 (D.C.Minn.1979); *Hinson v. N.L.R.B.,* 428 F.2d 133, 139 (8 Cir. 1970). In this case the debtor's pension plan obligations are also the basis for collective bargaining under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. That the debtor's pension fund beneficiaries may have enforceable rights under ERISA that are defined to the Union does not diminish the Union's authority to enforce pension funding obligations incorporated in a collective bargaining agreement. The rights created under the Taft-Hartley Act are independent of those possessed by pension fund beneficiaries under ERISA. See *Leonardis v. Local 282 Pension Trust Fund,* 391 F.Supp. 554, 556 (E.D.N.Y.1975). Therefore, an employer's failure to make contractually required contributions to an employees' fund will permit a union to bring an action under Section 301, 29 U.S.C. § 185 to enforce the employer's contribution obligation. This point was expressed in *Local 1902, Allied Service Division, etc. v. Safety Cabs, Inc.,* 414 F.Supp. 64 (M.D.Fla. 1976) as follows: (Page 65)

> "Although the subject matter of this action is the money owed by the Employer to the Employees' health and welfare, and vacation funds, under the Collective Bargaining Contract (as decided by the arbitrator), there is no doubt that when the Employer is alleged to have defaulted

in its contributions to the funds, the real party-in-interest under the contract to enforce that obligation is the Union."

■ In this case, the debtor's failure to perform its contractual obligation to continue the existing pension plan may be enforced by the Union in the context of the Taft-Hartley Act, with the result that the Union may properly be regarded as an entity that "has a claim against the debtor" and is therefore a "creditor" as defined in Code § 101(9).

## SHOULD THE UNION BE THE TENTH MEMBER OF THE COMMITTEE?

■ The Official Committee maintains that even if the Union qualifies as a creditor there would nevertheless be a conflict between the fiduciary duty owed by the Union to the creditor body and its duty to its own membership so that the court should exercise its discretion by not directing that the Union be added to the Official Committee which presently consists of nine creditors. It is argued that in an effort to preserve the estate of the debtor it might be contemplated that drastic reductions in the work force or total liquidation might be in order, whereas the Union has a duty to its membership to preserve jobs and maintain the present operations. This argument is not persuasive because in many instances the interests of creditors who are also members of the Official Creditors' Committee are not parallel to one another, or to the debtor. Some creditors may desire to continue the debtor in business as a source of supply or as a customer, while others may wish to liquidate the debtor rather than accept anything less than a one hundred per cent distribution. It should not be held that since a union has a duty to its membership it must necessarily follow that it can never serve on the Official Creditors' Committee when the employer of its members is a debtor in a bankruptcy case.

■ The other point urged by the Creditors' Committee is that the Union would have access to all of the past and prospective financial records of the debtor, which would grant the Union an overwhelming advantage in any future negotiations. This argument rings hollow, especially since the debtor does not appear to object to the Union's participation on the Official Creditors' Committee. In any event, it would seem that in light of the debtor's economic distress and its status as a debtor in a Chapter 11 case, there would not be much financial information revealed to the Creditors' Committee that the Union would be unable to obtain through other channels. However, should it appear at any time that certain information required special protection, the court would be in a position to fashion a protective order to protect the estate, as authorized under Bankruptcy Rule 918.

As a practical matter, the Union may exercise only one vote as a member of the Official Creditors' Committee. Therefore, notwithstanding the size of the Union or the amount of its claim, nine other members of the Committee will have equal standing and weight in expressing their views with regard to the actions of the Committee as a whole.

■ In the circumstances of this case, where the employees of the debtor have a substantial claim for unpaid pension benefits, which claim may be enforced by the Union under its collectively bargained labor agreement with the debtor, and since the Union may be regarded as a creditor with respect to this claim, the Union should be appointed as an additional member of the Official Creditors' Committee in order to assure adequate representation of the interests of the employees affected by the debtor's failure to satisfy its pension plan funding obligation. The appointment shall be made by the United States Trustee under 11 U.S.C.A. § 151102, in accordance with this Court's order.

Submit order on notice.