**In re BARNEY'S, INC., et al., Debtors.**

**Bankruptcy Nos. 96 B 40113 to 96 B 40133.**

United States Bankruptcy Court, S.D. New York.

June 21, 1996.

As Amended Aug. 5, 1996.

432

LeBoeuf, Lamb, Greene & MacRae L.L.P., New York City, for Debtors.

Stroock & Stroock & Lavan, New York City, for Official Committee of Unsecured Creditors.

Marcus Montgomery, P.C., New York City, for Amalgamated Insurance Fund.

## MEMORANDUM DECISION ON DEBTORS' MOTION FOR AN ORDER REMOVING THE AMALGAMATED INSURANCE FUND FROM THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Barney's Inc. ("Barney's") and its 19 debtor affiliates (collectively, the "Debtors") have moved by order to show cause for an order pursuant to § 105(a) of title 11, United States Code (the "Bankruptcy Code"), removing the Amalgamated Insurance Fund (the "Fund") from the Official Committee of Unsecured Creditors (the "Committee"). The Committee supports the motion. The Fund and Office of the United States Trustee (the "United States trustee") oppose it. For the reasons stated herein, the motion is denied.[1]

### Facts

The facts as established during the evidentiary hearing on this motion are as follows. On January 10, 1996, Debtors filed separate petitions for relief under chapter 11 of the Bankruptcy Code in this district. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, they have been continued in possession and control of their businesses and assets as debtors-in-possession.

Promptly after these cases were commenced, the United States trustee scheduled a January 22, 1996 organizational meeting,

and at its request, Debtors so notified their 40 largest unsecured creditors, on a combined basis. At that meeting approximately 40 entities submitted Creditors' Committee Acceptance/Rejection Forms to the United States trustee seeking appointment to the committee of unsecured creditors in formation. The Fund and the Amalgamated Retail Insurance Fund ("Retail Fund") were among them. The United States trustee reviewed those forms during the meeting and immediately thereafter appointed a committee consisting of the following creditors:

Connecticut General Life Insurance Co. ("CIGNA")

The Travelers Insurance Company

Teachers Insurance & Annuity Association

Allstate Life Insurance Company

Republic National Bank of New York ("Republic")

NatWest Bank, N.A.

Protective Life Insurance Company

Chemical Bank

Isetan of America, Inc.

CIT Group

Sanwa General Equipment Leasing

BNY Financial Corporation

Hugo Boss Fashions, Inc.

The Donna Karan Company

Hickey Freeman Co., Inc.

The United States trustee then advised that any disappointed creditor could explain in writing why the Committee did not adequately represent its interest. Mr. Jeffrey Warbet, as the Fund's acting Assistant Deputy Plan Administrator, did that in a letter dated January 23, 1996. In relevant part, it states:

> I am writing this letter to formally request that the [United States trustee] reconsider its decision and appoint the [Fund] to the Committee. . . .

On January 22, 1996, the [United States trustee] appointed 15 Trade and Debt Creditors to the Committee. Based upon

---

1. Our subject matter jurisdiction of this contested matter is predicated on 28 U.S.C. § 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This motion is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

the present composition of the Committee, I believe that the Committee fails to represent the over 1000 Union employees, which are employed by Barneys Inc. and represented by the Union of Needletrades, Industrial & Textile Employees (hereinafter, "UNITE"), successor in interest to the Amalgamated Clothing and Textile Workers' Union, AFL–CIO, CLC (hereinafter, the "ACTWU").

In connection with the Collective Bargaining Agreements made by Barneys Inc. and ACTWU, Barneys Inc. is currently obligated to contribute to two separate Health and Welfare and Pension Funds, the Amalgamated Insurance Fund; and the Amalgamated Retail Insurance Fund (hereinafter, the ["]Pension Funds"). Each one of the Pension Funds is currently in the process of preparing to file Unsecured Non-priority Proofs of Claim in the amount of $1.5 million with the Clerk of the U.S. Bankruptcy Court.

The Union employees of Barneys Inc. clearly have an interest in all actions and determinations that have or will be made by the Committee and seek to have a voice. That voice is currently not represented on the Committee.

*See* Objection of the United States Trustee to Order to Show Cause Why Debtors Should Not Be Entitled to Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code Removing the Amalgamated Insurance Fund from the Official Committee Of Unsecured Creditors ("United States trustee's Objection"), Ex. D.[2]

On or about January 25, 1996, CIGNA resigned from the Committee. The next day, the United States trustee appointed Zurich Management, Inc., f/k/a Kemper Asset Management, in CIGNA's place. *See* United States trustee's Objection, Ex. F.

By letter dated February 16, 1996, Warbet renewed the Fund's request for Committee appointment. In part, that letter states:

Again, I ask that the [United States trustee] reconsider its decision and appoint the [Fund] to the Committee to represent the over 1000 Union employees which are employed by Barneys Inc. and are represented by [UNITE]. . . .

*See* United States trustee's Objection, Ex. G. That day, Diana G. Adams, Esq., an attorney with the United States trustee, spoke to Warbet by telephone about the Fund's request. She followed up that conversation with a letter dated February 20, 1996. That letter reads, in part, as follows:

In response to your letter dated January 23, 1996, and as we discussed on the telephone on February 16, 1996, we have considered the request of [UNITE] that it be added to the [Committee]. . . .

As I informed you in our conversation, the Committee, as presently constituted, has fifteen members. Due to the procedural difficulties that may be encountered when an even number of members are appointed to a committee, it is the policy of this Office to form committees with an odd number of members. In view of this policy, I suggested that (i) UNITE contact the Committee directly to discuss the possibility of serving on the Committee in an *ex officio* capacity, or (ii) await the resignation of a member of the Committee at which time this Office would consider appointing UNITE to replace the resigning member. Please note that this Office cannot guarantee that UNITE will be appointed in such event; this Office will consider all facts that exist at the time such member resigns.

*See* United States trustee's Objection, Ex. H. By letter dated February 29, 1996, Warbet wrote to Committee counsel requesting that the Fund be appointed to the Committee as an *ex officio* member. *See* United States trustee's Objection, Ex. I. Apparently, the Committee did not respond to the Fund's overtures until March 18, 1996, when counsel to the Committee informed Mr. Warbet that the Committee had declined the Fund's request. However, on or about March 13, 1996, Republic resigned from the Committee. After reviewing the contents of Warbet's

---

**2.** Hereafter, the Union of Needletrades, Industrial and Textile Employees, successor in interest to the Amalgamated Clothing and Textile Workers Union, AFL–CIO, CLC, shall be referred to as "UNITE".

January 23 and February 16 letters, the United States trustee selected the Fund to take Republic's place on the Committee. *See* United States trustee's Objection, Exs. J and K.

By separate letters dated March 21, 1996, Debtors and the Committee objected to that appointment and requested the United States trustee promptly to remove the Fund from the Committee on the grounds that the Fund is not a creditor of the Debtors. *See* United States trustee's Objection, Exs. L and M. The Debtors explained that they "have no outstanding obligations to the Fund, or for that matter, any union or union related entities of the various Debtor's estates" because "all prepetition amounts owed to the Fund were paid by the Debtors pursuant to 'first day' orders of the Bankruptcy Court." United States trustee's Objection, Ex. L., p. 1.

The Fund and Retail Fund responded to those letters by letter dated March 25, 1996 (the "March 25 letter"). They contested the attempts by Debtors and the Committee to minimize their role in these cases or their ability to represent the interests of all creditors. They made the following points, among others:

(i) Although the Fund does not hold a liquidated prepetition claim, the Retail Fund is owed $62,000 prepetition and both funds filed contingent proofs of claim aggregating in excess of $2.8 million.

(ii) The Retail Fund's collective bargaining agreement is scheduled to expire on or about April 10, 1996; the Fund's agreement is scheduled to expire in November 1997.

(iii) Given the Funds' long history and knowledge of the Debtors, the Fund's appointment to the Committee is in the best interest of all creditors.

*See* United States trustee's Objection, Ex. N, pp. 1–3. Moreover, they cited *In re St. Johnsbury Trucking, et al.,* 184 B.R. 446 (Bankr.S.D.N.Y. Conrad, J.), *In re Leslie Fay Companies, Inc., et al.,* 181 B.R. 156 (Bankr.S.D.N.Y. Brozman, J.), and *In re Leaseway Holdings, Inc.,* No. 92 B 22373 (Bankr.S.D.N.Y. Hardin, J.), as cases pending in this district in which multiemployer

pension funds have been appointed to creditors' committees. *Id.,* p. 3. They also noted that the Fund is a member of the creditors' committee in *In re Plaid Holding Group,* Nos. 95 B 43065 through 43074 (Bankr. S.D.N.Y. Abram, J.), "based upon the existence of a contingent withdrawal liability claim." *Id.* They cited several reported decisions in which courts allegedly appointed creditors holding contingent, disputed, unmatured or unliquidated claims to creditors' committees, and stated that additional complex collective bargaining issues under § 1113 of the Bankruptcy Code "are on the horizon which are certain to affect the Debtors' reorganization efforts and which will have an impact on all creditors". *Id.,* pp. 3–4.

By "follow-up" letter brief dated March 26, 1996 (the "March 26 letter"), Debtors responded to the March 25 letter and "further amplif[ied]" their objection to the Fund's appointment to the Committee. *See* United States trustee's Objection, Ex. O, p. 1. Debtors denied that the Retail Fund held a pre-petition liquidated claim against them, while noting that the Retail Fund is distinct from the Fund and was not appointed to the Committee. *Id.,* pp. 1–2. As an "aside", Debtors contended that the Fund, as an alleged agent of the Retail Fund, is without authority to act on the Retail Fund's behalf, and has no direct relationship with the Debtors. *Id.,* p. 1, n. 1. The Debtors elaborated on the status of their labor negotiations:

[Barney's] current collective bargaining agreement with Local 340 UNITE AFL–CIO (the "Union") expires on March 31, 1996 and they are currently in arduous negotiations regarding a new collective bargaining agreement. The Fund is a captive of the Union. The [March 25 letter] suggests that one of the changes offered by the Debtors' management in the new collective bargaining agreement is withdrawal from [the Retail Fund]. This withdrawal, [the Retail Fund] suggests, would trigger withdrawal liability under the multiemployer pension plans. The Debtors' management, however, is not requesting withdrawal from the Fund or [the Retail Fund] and, in fact, in the most recent

negotiating sessions with the Union affirmed that it would continue to be a participant in such pension plans. Thus any claims that the Fund or [Retail Fund] may have for withdrawal liability are unmatured, contingent and, based on the Debtors' intentions, never likely to be triggered. This kind of remote "claim" should not be the basis for membership on a creditors' committee.

*Id.*, p. 2. Debtors denied that any of the cases cited in the March 25 letter by the Fund support the Fund's assertion that the holder of a contingent claim may serve on a creditors' committee and urged that

if creditors with unliquidated and unmatured claims were granted membership on creditors' committees, all creditors with executory contracts would insist on membership. This would allow "contingent creditors" whose claims never materialize into liquidated pre-petition claims and whose interests are not impaired to dictate the course of conduct of the committee. Such a result could not have been the intention of Congress when it authorized the United States Trustee to appoint a "committee of creditors *holding* unsecured claims." 11 U.S.C. section 1102(a)(1) (emphasis added).

*Id.*, p. 3. They also maintained that the Fund, as an alleged "captive of the Union", has a conflict of interest disqualifying it from Committee membership:

[T]he Union is trying to extract significant concessions from Barneys while Barneys is trying to reach [a collective bargaining agreement] that is financially viable for the long-term objectives of the Debtors. As a member of the Committee, the Union, through the Fund, would have access to confidential financial information which would unfairly prejudice Barneys in these negotiations. The Union's access to information concerning an employer's financial condition is regulated by the National Labor Relations Act ("NLRA") and inclusion of the Fund on the Committee would undermine the balance of negotiating power created by Congress in the NLRA. As such, the interests of the Fund in the representation of the Union are in direct conflict with the interests of the Barneys'

estate as a whole. Thus, aside from the fact that neither the Fund nor [the Retail Fund] are creditors, inclusion of the Fund on the Committee would seriously hamper the ability of Barneys to reach favorable agreements with the Union.

*Id.*, pp. 3–4. Finally, as evidence of the Fund's alleged "proclivity" for self-interested conduct, Debtors cited to a hand-out circulated to employees of Barney's and Barney's America by UNITE which allegedly contains a representation that the Fund will use its Committee membership to further its own interests, notwithstanding the best interests of the estate. *Id.*, p. 4. Debtors supplied the United States trustee with a copy of that hand-out.

The Fund immediately wrote the United States trustee "to correct the factual errors which the Debtors make in their [March 26] letter to you." *See* United States trustee's Objection, Ex. P., p. 1. First, it explained that the Fund has a direct relationship with the Debtors and is both a contractual and statutory contingent creditor of the Debtors:

[C]ertain of the Debtors' employees are participants of the Fund. As their employer, Barney's pays money directly to the Fund on behalf of its employees who are members of Local 340 UNITE. In the event of a withdrawal from the Fund, [Barney's] has a funding obligation as defined by contract and [the Multiemployer Pension Plan Amendments Act].

Next, it disputed that the Fund is an agent of the Retail Fund:

The Fund, is not an agent or administrator for [the Retail Fund]. However, both the Fund and [Retail Fund] are administered by the Amalgamated Life Insurance Company pursuant to a subcontracting arrangement. The Amalgamated Life Insurance Company is responsible for collecting contributions, withdrawal liability and administering benefits on behalf of the employees of Barney's.

*Id.*, pp. 1–2. It denied that it was responsible for dissemination of the UNITE hand-out and contended that the Retail Fund's prepetition claim of $62,000 had not been satisfied. *Id.*, p. 2. In closing, the Fund's counsel observed that

it has been my personal experience in the past two decades that both multi-employer funds and unions are fully capable of abiding by the same confidentiality restrictions that apply to all committee members.

*Id.*

By letter directed to counsel to the Fund, Debtors and the Committee, the United States trustee acknowledged receipt of the above-described letters, and noted that each letter "addressed the issue of the appropriateness of the Fund serving on the Committee." *See* United States trustee's Objection, Ex. Q., p. 1. To obtain assistance in evaluating "the issues raised in the Letters," the United States trustee requested the Fund's counsel to address the following issue: "how the Fund, as a member of the Committee, with a fiduciary responsibility to all unsecured creditors, intends to harmonize this duty with the duty it owes to its members." *Id.* at pp. 1–2.

The next day, counsel to the Fund responded to that request. *See* United States trustee's Objection, Ex. R. The Fund addressed the Debtors' assertions that: (1) the Union, through the Fund, would have access to confidential financial information which would unfairly prejudice Barney's in its ongoing collective bargaining negotiations with the Union; and (2) the Fund intends to use its position on the Committee as a speaker's platform to further its own agenda. First, the Fund contended that even if true, those allegations did not support the Fund's removal from the Committee. Moreover, citing *In re Schatz Federal Bearings Co., Inc.,* 5 B.R. 543 (Bankr.S.D.N.Y.1980), the Fund stated that "the fiduciary duty which the Fund owes to its members does not conflict with the fiduciary duty which it owes to the entire body of unsecured creditors as a member of the Committee." Quoting *In re Microboard Processing, Inc.,* 95 B.R. 283, 285 (Bankr.D.Conn.1989), to the effect that " '[c]ourts should not remove a member from a creditors' committee in the absence of specific evidence which supports a finding that the member has breached or is likely to breach a fiduciary duty to, or has an actual impermissible conflict of interest with, the class of creditors represented by that mem-

ber' ", the Fund argued that Debtors and the Committee "have failed to provide any cognizable basis to preclude the Fund from serving as a member of the Committee, [and, thus,] their request to bar the Fund should be denied." *Id.* at p. 2. The Fund likened itself to an indenture trustee who must harmonize its obligations to all creditors with their constituencies through the voting and confidentiality processes:

> In essence a fiduciary sitting on a creditors' committee may be, and in many cases is, constrained from delivering confidential information to its individual constituents. So long as the [Fund] ... believes it is otherwise prudent to attempt to advance the interests of [its] constituents by participating in a collective creditor representation such as a committee, [its] actions in that capacity are protected, absent gross negligence, fraud or willful misconduct. Those are, of course, the same rules that govern [its] behavior as a member of a creditors' committee.

*Id.*

That day Debtors' counsel sent the United States trustee copies of six checks payable to the Retail Fund as proof for Debtors' assertion that the Retail Fund is not a current creditor in these cases. *See* United States trustee's Objection, Ex. S. After reviewing the letters and the case law cited in each letter, the United States trustee advised by letter dated March 28, 1996 that it would adhere to its initial determination to appoint the Fund to the Committee. *See* United States trustee's Objection, Ex. T.

### Discussion

Rule 2020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") makes "[a] proceeding to contest any act or failure to act by the United States trustee ... [a contested matter]." It "provides a procedure for judicial review of the United States trustee's acts or failure to act in connection with the administration of the case." 1991 Advisory Committee Note (as cited in 8 *Collier on Bankruptcy* ¶ 2020.01 at p. 2020–1 (15th rev. ed. 1996)). *See also* Bankruptcy Rule 2007(c) (addressing bankruptcy court's ability to vacate the appointment of a prepetition committee or take other appropriate action if committee is

empaneled in violation of § 1102(b)(1) of the Bankruptcy Code; 1991 Advisory Committee Note states that "[a]lthough this rule deals only with judicial review of the appointment of prepetition committees, it does not preclude judicial review under Rule 2020 regarding the appointment of other committees"). The bankruptcy rules do not and cannot create substantive rights that do not already exist elsewhere. *See* 28 U.S.C. § 2075. *See also In re Columbia Gas System, Inc.*, 133 B.R. 174, 176 (Bankr.D.Del. 1991).

■ As distilled from the papers and oral argument during the hearing on this motion, Debtors' contention is that § 105(a) empowers us to review the United States trustee's decision to appoint the Fund to the Committee and to reverse it if we find that the trustee acted "arbitrarily or capriciously" or "clearly abused its discretion" in making that appointment. They urge that such relief is appropriate here since the Fund is disqualified from serving on the Committee because (i) it is solely a contingent creditor of the Debtors and the likelihood of its claim maturing is remote, and (ii) it has an "irreconcilable", "actual" and "serious" conflict of interest with these estates. The Committee joins in the motion.

■ The United States trustee denies that either §§ 1102 or 105(a) of the Bankruptcy Code supports the relief sought by Debtors. It contends that by repealing § 1102(c) of the Bankruptcy Code (as described below), Congress removed our power to review the United States trustee's appointment of creditors' committees. Because § 105(a) cannot create substantive rights not otherwise found in the Bankruptcy Code, *see, e.g., In re First RepublicBank Corp.*, 95 B.R. 58, 60 (Bankr. N.D.Tex.1986), it argues that the repeal of § 1102(c) precludes resort to § 105(a) as a predicate for relief herein. In any event, the United States trustee denies that it acted arbitrarily or capriciously, abused its discretion or otherwise erred in appointing the Fund to the Committee. The Fund agrees with the United States trustee's analysis of the applicability of § 1102 to this matter, but

acknowledges that most reported decisions hold that the court has the power to alter the composition of an official committee. It insists that it is entitled to sit on the Committee and denies that there is cause to reverse that appointment.

■ The Bankruptcy Code provides that in a chapter 11 case the United States trustee "shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate." 11 U.S.C. § 1102(a)(1). The creditors' committee shall

> ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under [chapter 11] if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

11 U.S.C. § 1102(b). Under § 1102(a)(2), upon the request of a party in interest, "the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2). The appointment of any such committee is left to the United States trustee. *Id.*

■ The bankruptcy court formerly was authorized to change the membership or size of a statutory committee if it determined that the existing membership was not representative of the different kinds of claims or interests to be represented. *See* 11 U.S.C. § 1102(c) (repealed). *See also In re Salant Corp.*, 53 B.R. 158 (Bankr. S.D.N.Y.1985) (court denied motion for appointment of separate employee-creditors' committee, but directed United States trustee to add three creditors to existing committee). Subsection (c) was repealed in 1986 pursuant to the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, which extended and expanded the pilot United States trustee system on a permanent nationwide basis. Congress intended to "separate the administrative duties [of the United States trustee] from the judicial tasks, leaving bankruptcy judges free to resolve disputes untainted by knowledge of

administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination." H.R.Rep. No. 99–764, 99th Cong., 2d Sess. 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5230. Thus, the purpose of amending § 1102 was "to transfer the authority to appoint the chapter 11 committee of unsecured creditors from the court to the United States trustee as it is an administrative task." *Id.* at 28, U.S.C.C.A.N. at 5241.

Notwithstanding the repeal of § 1102(c), most courts hold that upon timely application, the bankruptcy court can review the United States trustee's decisions regarding the size and/or composition of an official committee. Many view § 105(a) of the Bankruptcy Code as a means of ensuring that the trustee has not acted arbitrarily or capriciously, or otherwise abused its discretion, in appointing the committee. *See, e.g., In re Dow Corning Corp.,* 194 B.R. 121, 131 (Bankr.E.D.Mich.), *stay pending appeal denied,* 194 B.R. 147 (Bankr.E.D.Mich.1996), *stayed pending appeal,* 96 CV–71456 (E.D.Mich. April 4, 1996); *In re Plabell Rubber Products,* 140 B.R. 179, 181 (Bankr. N.D.Ohio 1992); *In re Columbia Gas System, Inc.,* 133 B.R. at 175–76; *In re First RepublicBank Corp.,* 95 B.R. at 60. *See also In re Hills Stores Co.,* 137 B.R. 4, 8 (Bankr. S.D.N.Y.1992) (statute no longer permits addition or deletion of committee members by court "except in circumstances not relevant here"); *In re Gates Engineering Co., Inc.,* 104 B.R. 653, 654 (Bankr.D.Del.1989) (after noting that court no longer has power to alter committee membership, court addresses merits and denies request of state and local governmental entities to sit on warranty claimants' committee because governmental unit not "person" eligible to sit on committee). *But see In re Victory Markets, Inc.,* 196 B.R. 1, 3 (Bankr.N.D.N.Y.1995) (rejecting case authority holding that section 105(a)

gives court power to order United States trustee to appoint a creditor to committee because "it is in derogation of the express statutory language of Code § 1102"), *appeal dismissed,* 195 B.R. 9 (N.D.N.Y.1996).[3] We will apply § 105(a) of the Bankruptcy Code to review the United States trustee's actions herein because

> if a request to the United States trustee to change the membership of the committee fails, or if there is an objection to the act of the United States trustee, there must be an ability to resort to the court; absent very specific and . direct language, one should not conclude that Congress had any intention to exclude the court from those able to change committee membership for appropriate reasons.

*In re Plabell Rubber Products,* 140 B.R. at 180 (citing 5 *Collier on Bankruptcy* ¶ 1102.01 at p. 1102–21 (15th rev. ed. 1992)).

■■■ A decision is not "arbitrary and capricious" unless it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its decision, or is otherwise patently unreasonable, arbitrary or fanciful. *Heat & Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1022 (D.C.Cir.1986). *See also State of New York Dept. of Social Services v. Shalala,* 21 F.3d 485, 492 (2d Cir. 1994) (in determining whether agency has acted arbitrarily and capriciously, court may not substitute its judgment for that of agency but must determine whether agency's decision was based on consideration of relevant factors and whether there has been clear error of judgment). Debtors must present "substantial evidence" that the United States trustee acted arbitrarily and capriciously in appointing the Fund to the Committee. *See Watkins Motor Lines, Inc. v. I.C.C.,* 641 F.2d 1183, 1188 (5th Cir.1981).

The Fund and Retail Fund are multiemployer trust funds and pension plans estab-

---

**3.** Some courts hold that § 1102(a)(2) of the Bankruptcy Code empowers the bankruptcy court to conduct a *de novo* review of the United States trustee's actions in appointing an official committee and to reverse or modify them if the committee does not adequately represent the unsecured creditor constituency. *See, e.g., In re Texaco Inc.,* 79 B.R. 560, 566 (Bankr.S.D.N.Y. 1987); *In re Sharon Steel Corp.,* 100 B.R. 767, 776 (Bankr.W.D.Pa.1989). *See also In re Public*

*Service Co. of New Hampshire,* 89 B.R. 1014, 1021 (Bankr.D.N.H.1988) (citing *Texaco* in holding that court necessarily has inherent power to alter structure of a committee "when an asserted justification requiring a *judicial* determination (rather than an administrative action by the U.S. Trustee) is brought before the court during the conduct of the proceedings") (emphasis in original).

lished pursuant to Agreements and Declarations of Trust, as amended from time to time, and § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, for the purpose of providing pension benefits to eligible employees of employers who contribute to those funds, in accordance with the terms of certain collective bargaining agreements made between the employers in the men's and boys' clothing industry and local chapters of UNITE. Among the employees covered by the Fund and Retail Fund respectively, are Barney's tailors, office staff and various back-office personnel who are members of Local 25 of UNITE and sales personnel who are members of Local 340 of UNITE. Barney's is a party to separate collective bargaining agreements with each of them pursuant to which it is obligated to make plan contributions.

The Fund concedes that no liquidated prepetition obligations are owed by the Debtors to it for unpaid prepetition contributions. However, it has filed an unsecured nonpriority proof of claim in the sum of $1,523,489.39, based on Debtors' contingent "withdrawal" liability pursuant to ERISA, 29 U.S.C. § 1002(5), as amended by the MPPAA.[4]

■ All creditors holding unsecured claims are eligible for committee membership. See 11 U.S.C. § 1102(a)(1). A "creditor" is any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "claim" is a "right

to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). See also In re First RepublicBank Corp., 95 B.R. at 60 (to be eligible for membership on statutory committee, entity must hold unsecured prepetition claim); In re Bennett, 17 B.R. 819, 820 (Bankr.D.N.M.1982) (same). Relying on the unambiguous language of the Bankruptcy Code, courts have permitted creditors holding disputed claims to sit on statutory committees. See In re Laclede Cab Co., 145 B.R. 308, 309 (Bankr.E.D.Mo.1992); In re Richmond Tank Car Co., 93 B.R. 504, 506 (Bankr.S.D.Tex.1988); In re Daig Corp., 17 B.R. 41, 43 (Bankr.D.Minn.1981); In re Grynberg, 10 B.R. 256, 257 (Bankr.D.Colo. 1981). See also In re Microboard Processing, Inc., 95 B.R. at 286 (creditors whose claims were being disputed in pending adversary proceeding not disqualified from committee membership on basis of conflict of interest). The rationale of those cases is equally applicable here. See also Kenneth N. Klee and K. John Shaffer, Symposium on Bankruptcy: Chapter 11 Issues: Creditors' Committees under Chapter 11 of the Bankruptcy Code, 44 S.C.L.Rev. 995, 1009–1010 (1993) (the United States trustee may appoint an unsecured creditor to a committee "even though that creditor's claim against the estate is contingent, disputed, unmatured, or unliquidated").[5] In In re Dow

---

4. The Fund contends that it has a statutory right to payment under MPPAA in the event that the Debtors partially or completely withdrawal from the Fund. A partial withdrawal occurs under the MPPAA when "(1) there is a 70% contribution decline, or (2) there is a partial cessation of the employers' contribution obligation." 29 U.S.C. § 1385(a). A complete withdrawal occurs "when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under a plan." 29 U.S.C. § 1383(a).

5. The cases cited by Debtors as support for their assertion that a creditor whose sole claim is a contingent claim cannot sit on a statutory committee do not arise under § 1102 of the Bankruptcy Code and are otherwise inapposite. In Boston Post Road Limited Partnership v. F.D.I.C. (In re Boston Post Road Limited Partnership), 21 F.3d 477, 484 (2d Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995), the court held that non-debtor tenants to unexpired

leases whose security deposits were held by the debtor could not vote on a plan of reorganization because they held contingent administrative claims and the debtor was impermissibly attempting to manufacture an accepting impaired class. Nothing in that case is germane to the issue of whether the United States trustee acted arbitrarily or capriciously in appointing the Fund to the Committee. In Public Serv. Co. of New Hampshire v. New Hampshire Elec. Coop., Inc. (In re Public Serv. Co. of New Hampshire), 884 F.2d 11, 14–16 (1st Cir.1989), the court held that the holder of a contingent claim based upon damages that might accrue under a contract that had not been breached may not set off such claim against amounts due to the debtor because the claimant did not possess a right of setoff under applicable non-bankruptcy law, and absent rejection or termination of the contract, the claimant had no "provable" claim against the estate to satisfy the mutuality requirement of § 553. However, the Fund is not seeking to satisfy its claim, let alone elevate it the status of a

*Corning Corp.*, the court, pursuant to § 1102(a)(2) of the Bankruptcy Code, directed the United States trustee to appoint a committee to represent physicians holding contingent and disputed contractual indemnity, common law indemnity and contribution claims against the debtor's estate. *See* 194 B.R. at 144.[6] Furthermore, the creditor whose committee appointment was sustained in *In re Laclede Cab Co.* held a "disputed, contingent and unliquidated" claim. *See* 145 B.R. at 309. Finally, the Fund is a member of the official committee of unsecured creditors in *In re Plaid Holding Group*, Nos. 95 B 43065 through 95 B 43074 (Bankr. S.D.N.Y.Abram, J.). Its sole claim therein is a contingent claim on account of withdrawal liability under MPPAA, although we understand that the issue of the Fund's eligibility to serve on that committee was not raised therein.[7]

Had Congress sought to limit the Fund's right to sit on the Committee, as urged by Debtors, it presumably would have done so. *Compare* 11 U.S.C. § 303(b) (petitioning creditor in involuntary case must hold claim that "is not contingent as to liability"); 11 U.S.C. §§ 702 and 703 (creditors eligible to vote for a chapter 7 trustee or successor trustee must hold "allowable, undisputed, fixed, liquidated, unsecured" claims). It hasn't and by statute the Fund is eligible for appointment to the Committee. *See In re First RepublicBank Corp.*, 95 B.R. 58 (motion for order removing creditor from official committee denied when, among other things, movant failed to prove that entity not a creditor under the Bankruptcy Code).

The likelihood that the Fund's claim will be liquidated may bear on the appropriateness of its appointment to the Committee. *Compare In re Dow Corning Corp.*, 194 B.R. at 144. Although Debtors insist that they have no present intent to withdraw from the Fund, they have not—and apparently cannot—insure that they will not voluntarily do so. Moreover, during the hearing on the motion, L. Robert Batterman, Esq., Debtors' witness, acknowledged that a partial or complete involuntary withdrawal under MPPAA, *see* 29 U.S.C. §§ 1383(a) and 1385(a), is a possibility in a chapter 11 case. He expressed no view as to the likelihood of such an occurrence in these cases. Under these circumstances Debtors have not demonstrated that the United States trustee's decision to appoint the Fund to the Committee lacked a rational basis or was in any other way inappropriate.

 A creditors' committee and its members owe no duty to the debtor or its estate. *Manville Corp. v. Equity Sec. Holders' Comm. (In re Johns–Manville Corp.)*, 60

---

pre-petition secured claim. Finally, *Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft Corp.)*, 58 F.3d 1573, 1578 (11th Cir.1995), and *Fairchild Aircraft Inc. v. Cambell (In re Fairchild Aircraft Corp.)*, 184 B.R. 910, 933 (Bankr.W.D.Tex.1995), dealt with issues unique to future product liability claims, and the courts, motivated by due process and fundamental fairness considerations, accordingly found that persons, unknown to the debtors though certain to exist, who might conceivably assert product liability claims at some point in the future, did not hold "claim[s]" within the meaning of § 101(5) of the Bankruptcy Code that could be discharged under or bound by the terms of a plan of reorganization, not because such claims were contingent, but because there was no pre-confirmation connection whatsoever between such unidentified persons and the debtors. Neither the Fund nor its contingent claim suffers from this infirmity.

**6.** Debtors are correct that the *Dow Corning* court denied a motion by the United Steelworkers of America, AFL–CIO, CLC, to compel the United States trustee to appoint it to the unsecured

creditors' committee. *See* 194 B.R. at 144. We do not interpret that as support for the proposition that a creditor whose sole claim is a contingent claim is barred from committee appointment. Rather, as we read the decision, the court found, in effect, that the union's interests were adequately represented by the existing committee, that the union was capable of asserting any claim that it might have on its own, and that it would be impractical and senseless to create an additional committee comprised solely of the union or its members. *Id.* The court's fundamental inquiry with respect to the union's motion concerned adequacy of representation, not eligibility for committee membership.

**7.** Multiemployer pension funds sit on statutory committees in the following cases pending in this district: *In re St. Johnsbury Trucking, et al.*, 184 B.R. 446 (Bankr.S.D.N.Y. Conrad, J.), *In re Leslie Faye Company, Inc., et al.*, 93 B 41724 (Bankr. S.D.N.Y. Brozman, J.), and *In re Leaseway Holdings, Inc.*, 92 B 22373 (Bankr.S.D.N.Y. Hardin, J.). We understand that those funds hold either liquidated or liquidated and contingent claims, and that there was no challenge to the particular fund's appointment to the committee.

B.R. 842, 854 n. 23 (S.D.N.Y.), *rev'd on other grounds,* 801 F.2d 60 (2d Cir.1986). An entity need not be disinterested to qualify for committee membership. *In re First RepublicBank Corp.,* 95 B.R. at 61. *Compare* 11 U.S.C. § 1102(a) *with* 11 U.S.C. § 327(a). However, the committee and its members have a fiduciary duty to all creditors represented by the committee. *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 655, 664 (Bankr.E.D.Pa.1987) (citing *In re Mesta Machine Co.,* 67 B.R. 151, 156 (Bankr. W.D.Pa.1986), and *Woods v. City Nat'l Bank & Trust Co. of Chicago,* 312 U.S. 262, 268–69, 61 S.Ct. 493, 497–98, 85 L.Ed. 820, *reh'g denied,* 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941)). A creditor possessing a conflict of interest giving rise to a breach of that duty cannot serve on the statutory committee. *In re First RepublicBank Corp.,* 95 B.R. at 61. "Accordingly, the United States trustee would act arbitrarily and capriciously if [it] refused to remove a committee member who held a conflict of interest that amounted to a breach of the fiduciary duty that the creditor owed to the creditors represented by the committee." *Id.*

The Fund's alleged disqualifying conflict of interest is premised on the purported relationship among the Fund, Retail Fund and UNITE. Debtors' contend that the Fund and UNITE effectively are a single unit, such that disclosure of confidential and/or proprietary information to the Fund in its capacity as a Committee member effectively will be disclosure of that information to UNITE. They also contend that such information will be misused to further UNITE's goal of unionizing Debtors' non-union employees and to assist Local 25 and Local 340 of UNITE in collective bargaining negotiations by providing their representatives with information not otherwise discoverable under the National Labor Relations Act. Additionally, they maintain that the Fund is the Retail Fund's agent and is seeking Committee appointment to promote a "free standing" employee benefit plan for the benefit of those employees who are members of Local 340 and to the detriment of these estates because such a plan effectively would require Debtors to incur increased health and benefit obligations.

These are the same purported "conflicts" raised by Debtors and the Committee in their correspondence with the United States trustee protesting the Fund's appointment to the Committee. Notwithstanding the full opportunity afforded them by the United States trustee to be heard on those matters, neither the Debtors nor the Committee provided evidence of a unity of interest among the Fund and UNITE, or an agency relationship between the Fund and Retail Fund. As previously noted, the only mention of those alleged relationships was in Debtors' March 26 letter in which they baldly stated that the "Fund is a captive of the Union", and as an "aside", asserted without substantiation that the Fund was the Retail Fund's agent. *See* United States trustee's Objection, Ex. O, p. 1. That is not "specific evidence which supports a finding that the [Fund] has breached or is likely to breach a fiduciary duty to, or has an impermissible conflict of interest with, the class of creditors represented by that member." *In re Microboard Processing, Inc.,* 95 B.R. at 285. *See In re Map Intern., Inc.,* 105 B.R. 5, 6 (Bankr.E.D.Pa.1989) (party seeking to exclude creditor from committee membership bears burden of proving that creditor's appointment will be detrimental to reorganization). *See also In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. at 664 ("[o]nly if it is established that [the programmers appointed to the creditors' committee] have breached [their fiduciary] duties would we consider appointing another Creditors' Committee or in any way altering the composition of the Committee which we have, after much consideration, formulated"). Moreover, both assertions were refuted by the Fund, which accounted for its relationships with UNITE and the Retail Fund. The United States trustee rejected Debtors' complaints about the Fund's appointment to the Committee after accumulating a record consisting of any and all materials the parties desired to submit to the trustee, as well as information solicited by the trustee from the Fund. In light of that approach, coupled with the absence of evidence substantiating Debtors' contentions, we find that the United States trustee did not act arbitrarily or capriciously, or otherwise abuse its discretion, in appointing the Fund to the Committee. *See In re America West Airlines,* 142 B.R. 901

(Bankr.D.Ariz.1992) (court found that United States trustee did not act arbitrarily or capriciously in removing creditor from statutory committee where it expended substantial time conducting a thorough and complete analysis of all issues presented).

Moreover, the evidence adduced during the hearing belies Debtors' conflict of interest allegations. The Fund owns 100% of the common stock of ALICO Services Corporation ("ASC") which in turn owns 100% of the common stock of Amalgamated Life Insurance Company ("ALIC"). ALIC was formed in 1943 to administer and insure certain pension and welfare employee benefit funds sponsored by the Amalgamated Clothing and Worker's Union. ALIC, either directly or indirectly through its affiliate, Amalgamated Fund Administrators ("AFA"), provides administrative and other services to more than 50 pension and welfare benefit funds. In some cases, ALIC/AFA acts as a third party administrator for purposes of managing and administering certain benefit programs (such as group health and life insurance programs), as a collection agent for pension contributions, as a payment agent for benefits payable to employees or retirees under various programs established by employers or pursuant to collective bargaining agreements, and as the ERISA administrator for certain other pension and welfare benefit plans. ALIC serves as ERISA administrator for the Fund. ALIC/AFA also provides comparable administrative services to the Retail Fund in return for fees paid by the Retail Fund. Barney's is only one of approximately 250 employers whose employees are participants in the Fund and Barney's contingent withdrawal liability represents approximately .5% of the Fund's total unfunded vested benefit liability.

The Fund and the Retail Fund are governed by separate boards of trustees. Some of the trustees are selected by the union while the others are selected by the employers contributing to the particular fund. The Fund has six employer appointed, and eight union appointed trustees. The Retail Fund has five employer appointed, and three union appointed trustees. There is no overlap among the Fund and Retail Fund trustees. Under the governing instruments, each fund operates with "block voting" and quorum requirements, such that there must be a quorum and a majority for each of the employer-appointed and union-appointed groups of trustees, as blocks, in order for the respective fund to take action. The Fund and Retail Fund maintain separate offices, and have their own books, records and bank accounts. Mark Schwartz, Esq., is: (a) a senior vice president and in-house attorney for ALIC; (b) inside counsel to the Fund; and (c) house counsel to AFA and ALIC. No attorney for either the Fund or Retail Fund serves as counsel for both entities. In many instances, the union appointed trustees for both funds are officers of UNITE. UNITE officers also sit on the boards of Fund affiliates, including ALIC (10 of 18 directors) and ASC (6 of 9 directors). Nonetheless, and as borne out by the record herein, the Retail Fund and Fund are entities legally distinct from UNITE. See *Philadelphia Nat'l Bank v. Employing Bricklayers' Assn. of Phila.*, 169 F.Supp. 591, 595 (E.D.Pa.1959) (citing *United Marine Division v. Essex Transportation Co.*, 216 F.2d 410 (3d Cir.1954)). While the Retail Fund and Local 340 share office space, each pays its proportionate share of the rent. Their assets are not commingled, they maintain their own books, records and bank accounts, and retain different professionals, except that they use the same accountant. The Fund and Local 25 maintain their own books, records and bank accounts, do not share office space, and retain different professionals. Batterman testified that when negotiating collective bargaining agreements, Debtors deal with union personnel, not representatives of the Fund or Retail Fund.

The Fund trustees are fiduciaries "whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed [them]". *NLRB v. Amax Coal Co.*, 453 U.S. 322, 334, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672, *reh'g denied*, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981). There is no evidence that those fiduciary duties have been or will be compromised. A new collective bargaining agreement between Barney's and Local 340 has been concluded, subject to ratification by the union membership and the approval of this court. Thus, Debtors concerns about the misuse of confi-

dential information by UNITE to secure a "free standing" plan for the benefit of Local 340 employees are moot.

 Another "conflict of interest" alleged by Debtors is that unlike unsecured creditors who seek to maximize their return on their claims, the Fund's goal herein is to avoid the liquidation of its claim. Debtors failed to raise that issue with the United States trustee and cannot do so now. Moreover, Debtors have not demonstrated, and it does not necessarily follow, that those goals are inconsistent. Disagreement among creditors over the strategy or objectives of a committee is not a conflict which mandates removal of a creditor from a creditors' committee. *See In re Altair Airlines, Inc.,* 727 F.2d 88, 90 (3d Cir.1984). "[M]embers of a committee of unsecured creditors need not have parallel interest in order to qualify for membership on the committee." *In re Texaco, Inc.,* 79 B.R. at 567 (citations omitted). Rather "[t]he Code-required adequate representation implicitly recognizes creditors will disagree on strategy and objectives. Those conflicts must be resolved through the committee's decision-making process." *In re First RepublicBank Corp.,* 95 B.R. at 61. *See, e.g., In re Altair Airlines, Inc.,* 727 F.2d at 91 (union appointed to official committee over debtor's and United States trustee's objection; fact that union favored reorganization of stand-alone debtor while other creditors favored liquidation or merger/joint venture with non-union airline did not create disqualifying conflict of interest); *In re Plabell Rubber Products,* 140 B.R. at 182 (over objection of United States trustee, bankruptcy court appointed labor union to committee notwithstanding fact that union's claims were largely priority claims and that union had expressed interest in an employee buy-out of the debtor); *In re Enduro Stainless, Inc.,* 59 B.R. 603, 605 (Bankr.N.D.Ohio 1986) (stating that "[t]he Union may not act *through the committee* to further its self-interests, but until such actions are brought to the court's attention, the court will not deny its application based on mere assumptions", court appointed union to unsecured creditors' committee over United States trustee's objection notwithstanding that union had been unavailable for negotiations with management, had met with a competitor regarding an employ-

ee buy-out of debtor's plant, had indicated that it might request appointment of chapter 11 trustee, presumably would oppose rejection of union collective bargaining agreement and had litigation pending against debtor); *In re Schatz Federal Bearings Co., Inc.,* 5 B.R. at 548 (over objections by debtor and creditors' committee, court appointed union with substantial claim against debtor for unpaid pension benefits to creditors' committee; fact that union's goal of preserving jobs for its members might clash with debtor's efforts to preserve estate assets through drastic employee reductions or total liquidation was no basis to disqualify union). *Compare In re America West Airlines,* 142 B.R. at 903 (after United States trustee removed undersecured creditor from committee, court denied creditor's motion for reappointment finding that undersecured creditor's interests were diametrically opposed to those of unsecured creditors and that it was highly likely that creditor would be put in difficult position of choosing between its self interest and that of the unsecured creditors).

*Conclusion*

Based on the foregoing, Debtors' motion is denied.

SETTLE ORDER.